DELAMATYR and another vs. THE MILWAUKEE & PRAIRIE DU CHIEN RAILROAD COMPANY.

*Party as witness: Notice.— Liability of railroad company for injury to passenger.*

1. Under chapter 176, Laws of 1868, a party to an action may be examined as a witness on his own behalf without notice to the adverse party, although the latter is a corporation.

2. In an action against a railroad company for injury to the person, suffered by a passenger in descending from a car to the company's platform, the court, having fairly submitted to the jury whether the platform was a suitable one, and the car properly drawn up to it, did not err in refusing to submit further the questions, " whether defendant had any reasonable or probable ground to expect an accident to a passenger properly descending," etc., and whether it had, for a long time before the accident, used the same platform in the same condition, and in connection with the same car, etc.

3. Where a railroad company, by its negligence, compels a passenger to choose between incurring some risk in leaving the train, and being exposed to other inconveniences to which it has no right to expose him, and he is injured in getting off under circumstances which would not prevent a person of ordinary prudence from doing so, the company is liable.

APPEAL from the Circuit Court for *Dane* County.

Action by *Elias B. Delamatyr* and *Anna*, his wife, for an injury received by the wife in descending from a train on defendant's road, at Hanover Junction, in this state, and alleged to have been caused by defendant's negligence in not furnishing safe and proper means for such descent. On the trial, the plaintiffs were permitted to testify in their own behalf, against the objection that no notice of their intended examination had been served upon the defendant. The evidence for the plaintiffs tended to show that the train included only two passenger cars, of which the one in the rear was the ladies' car, and the other a gentlemen's car, immediately

in front of which was a baggage car; that *Mrs. Delama-tyr* was seated in the ladies' car when the train stopped at the junction; that, by direction of a brakeman, she passed through the gentlemen's car to the car platform at its front end, for the purpose of descending there; that the steps attached to this platform had not been drawn up opposite to the station walk or platform; that the latter was only a few inches above the rail, and nearly two and a half feet below the lower car step, and was over three feet from the rail horizontally; that plaintiff could not reach the station platform, therefore, by stepping down in the usual manner, but was obliged to jump some distance obliquely; that the ground immediately opposite the steps was muddy and slanted away rapidly from the ends of the ties, so as to make a kind of pit, unsuitable for a landing place; that a sister of *Mrs. Delamatyr's* had gotten down upon the platform safely immediately before her; that *Mrs. D.* descended to the lowest step, holding a sunshade and basket in one hand, and her skirts with the other, hesitated, and made some remark about the impracticability of the descent; but, being encouraged by her sister, took the hand of the latter with her own left hand (dropping her skirts), and sprang for the platform; that her skirts caught upon the "dog" of the brake as she descended; that she fell in such a way that her head and shoulders and a considerable portion of her body rested upon the station platform, and in falling broke her arm; and that no officer or employee of the company was present at the place of descent to assist her in descending. The evidence for the defense tended to show that the car platform from which *Mrs. D.* descended, was fully abreast of the station platform; that there was an iron railing by the platform steps, which she did not use to steady her descent; that she did not descend to the lowest step attached to the car platform, but jumped from the platform itself; that the station

platform was a safe and convenient place to alight, and had long been safely used for that purpose in connection with the same car from which *Mrs. Delamatyr* alighted; and that defendant was guilty of no negligence.

The court, after a general charge, and after giving certain instructions asked by the plaintiffs, further instructed the jury, at defendant's request, substantially as follows: (1) That defendant was not liable for injuries happening from mere accident or misfortune, without negligence on its part. (2) That a scintilla of evidence, or a mere surmise that there might have been negligence on its part, was not sufficient to charge it. (4) That if defendant had, for several years before the accident, used the platform at Hanover Junction to receive passengers descending from the same car that *Mrs. Delamatyr* attempted to descend from, and if, during all that time, passengers had daily landed from said car on said platform without receiving injury, such facts might be considered by the jury as tending to negative any negligence on defendant's part in using said platform in connection with said car. (5) That if *Mrs. D.* was guilty of negligence which in any degree contributed to produce the injury, plaintiffs could not recover. (7) That if she did not descend from the car by properly stepping down upon the car steps, and from those steps to the platform, and received the injury in consequence of such neglect, plaintiffs could not recover. (8) That if she attempted to jump from either of the steps to the [station] platform, and received the injury in consequence, plaintiffs could not recover. (9) That if the accident resulted from her neglecting to steady herself down the platform steps by means of the railing, plaintiffs could not recover. (18) That the question was, whether defendant, prior to the accident, could reasonably have foreseen that it might happen; that, in determining whether defendant was guilty of negligence, the jury must consider whether, prior to the accident,

it had reasonable or probable ground to anticipate any accident at that point, by reason of a passenger properly descending, step by step, from the platform of the car to the station platform.* The court *refused* the following instructions asked for defendant: (3) That if defendant had, for a very long time prior to this accident, used the platform at Hanover Junction in the same precise condition and position in which it was at the time of the accident, and in connection with the same car from which *Mrs. Delamatyr* attempted to alight, and if defendant had no reasonable or probable ground to anticipate an accident to a passenger properly descending from the steps of said car upon said platform, the jury might infer from such facts that there was no negligence on the part of the defendant in using said platform for a landing place for passengers alighting from said car. (12) That it was defendant's duty to provide reasonably safe and eligible means of exit from its cars, and it was not bound to exercise more than ordinary care and prudence in this respect; and if it did provide a reasonably secure method in this instance, plaintiffs could not recover. (17) That if there was any danger in plaintiff's attempting to jump from the steps of the car, she was as much bound to avoid the accident as defendant was not to contribute to its occurrence.

Verdict for plaintiffs, for $1,000; new trial denied; and from a judgment on the verdict, defendant appealed.

*Finches, Lynde & Miller,* for appellant, contended that the accident was shown by the evidence to have resulted from *Mrs. Delamatyr's* jumping from the car platform; and that if she was injured in consequence of making what she saw to be a hazardous experiment, defendant was not liable. 26 Ind. 470; 28 id. 441; 3 Rob. (N. Y.) 25; 26 Ill. 373; *Pittsburg, &c., R. R. Co.*

---

*The other instructions given at defendant's request, do not present any point not substantially included in those above stated. Rep.

*v. McClurg*, 56 Pa. St. 294, and cases there cited; *Diner and Wife v. Great Western R. W. Co.* (court of exchequer), Daily Transcript, Sept. 1868; *Harrold v. Great Western R. R. Co.*, 14 L. T. (N. S.) 440; *Nicks v. Marshall, ante*, p. 139. 2. To the point that the court erred in not giving the third instruction asked by defendant, counsel cited 3 Hurl. & Nor. 971; 4 id. 784; 10 Bosw. 180. 3. To the point that the court erred in admitting the testimony of the plaintiffs, they cited *Sika v. Ch. & N. W. R. W. Co.*, 21 Wis. 370. 4. They also contended that the verdict should have been set aside, because the testimony clearly showed that the accident was caused by *Mrs. Delamatyr's* skirts being caught by the "dog" of the brake, for which defendant was not responsible.

*B. E. Hutchinson* (with *J. C. Hopkins*, of counsel), for respondents, to the point that the question of negligence was properly submitted to the jury, and that a court could not hold, as matter of law, that *Mrs. Delamatyr* was guilty of negligence in endeavoring to descend when she was directed by the officers of the company to descend, cited *Nichols v. Sixth Av. R. R. Co.*, 38 N. Y. 131; *Clark v. Eighth Av. R. R. Co.*; 36 id. 136; *Sheridan v. Brooklyn City & Newton R. R. Co.*, id. 39; *Dunnigan v. Ch. & N. W. R. W. Co.*, 18 Wis. 28; *Spencer v. Mil. & P. du Ch. R. R. Co.*, 17 id. 487.

COLE, J. There can be no doubt that the plaintiffs had a right to be examined as witnesses on their own behalf, on the trial, without giving notice to the defendant. Chapter 176, Laws of 1868, gives them that right, and repeals the statute of 1859, under which the case of *Sika v. Chicago and Northwestern R. R. Co.* (21 Wis. 370), was decided.

It seems to us that the question of negligence was fairly submitted to the jury, under proper instructions by the court. No exceptions were taken to the general

charge, which is quite full, and covers all the law of the case. Neither were any exceptions taken to the special instructions asked and given on the part of the plaintiffs, while the court gave all but three of the eighteen special requests of the defendant. The third and twelfth instructions refused are obviously open to the criticism passed upon them by the counsel for the plaintiffs. Manifestly the question was not, whether the defendant company had any reasonable or probable ground to expect an accident to a passenger properly descending from the steps of the cars on to the platform at Hanover Junction ; or whether the defendant had, for a very long period of time prior to the accident, used the platform at that station, in the same precise condition and position in which it was at the time of the accident, in connection with the same car from which *Mrs. Delamatyr* was attempting to alight. But the question was, Had the company provided a sufficient platform to enable passengers to descend from the cars without danger ; and had the cars been drawn up to this platform so that persons might with safety, while exercising such care and prudence as prudent persons ordinarily use under similar circumstances, descend from them ? Of course it is the duty of the company to afford passengers reasonable facilities for alighting from the cars, both by a reasonably safe platform and by stopping the train in such a manner that they may avail themselves of it without unnecessary exposure. And, under the directions of the court, the jury must have found, upon the evidence, that the platform was not a proper one, or that it was not sufficiently near the steps of the car from which *Mrs. Delamatyr* was attempting to alight, to make the descent a safe one. And if the jury found either fact against the company, it would show negligence on its part, for which it would be liable to the party injured, unless there was contributory negligence. And this seems to be the only question in the case, whether really *Mrs. Delamatyr* was not herself guilty

of negligence in attempting to alight from the cars at the place and in the manner she did. Now, upon the part of the company it is insisted, that the testimony discloses a clear case of negligence on her part; that she did not descend the steps of the car, steadying herself down by the aid of the iron railing at the end of the car, and properly using the means the company had furnished for her to alight in safety, but jumped from the cars under circumstances which her own judgment told her rendered it rash and dangerous.

In answer to this argument we observe, in the first place, that it was purely a question for the jury to find, in view of all the facts, whether *Mrs. Delamatyr* was guilty of any negligence in descending the steps, or jumping from the cars, in the manner she did. As a matter of law, the court surely cannot say that she was careless or reckless in her conduct. It appears by incontestable evidence, that the train had stopped, and that she was told by the brakeman to go through the next car, and get off there. She says that, in obedience to these directions of the brakeman, she went through the next car ; walked down the corner steps of the platform ; saw that the place was a difficult one to alight from, because the steps were not opposite the platform, and were some two or three feet above it ; and that she would have to jump obliquely to alight upon the platform ; saw that her sister-in-law had landed safely ; gave her left hand to her sister, and attempted to jump upon the platform. This is the substance of her testimony. Now, as a matter of law, to characterize this conduct of hers as careless and negligent, would seem to be manifestly unwarranted. The rule that contributory negligence on her part would prevent a recovery, was stated in various propositions by the court, in the general charge and requests given. The jury were told that it was the duty of *Mrs. Delamatyr*, in descending from the car to the landing place, to use in a proper manner the steps of the car, and also the railing, if

necessary, to steady herself in descending the steps of the car to the platform ; and that if by reason of any improper or careless way of descending from step to step, or from the lower step to the platform, or if by any act of negligence on her part, the injury happened, then there could be no recovery. Thus, it will be seen that the court left to the jury the question, whether, upon the facts disclosed, *Mrs. Delamatyr* was guilty of negligence ; and we think that pre-eminently that was a question for the jury to decide, and not one for the court.

In the seventeenth special request asked by the defendant, and refused, the court was asked to charge, that if the jury should find from the evidence that there was any danger in *Mrs. Delamatyr* attempting to jump from the steps of the cars, she was as much bound to avoid the accident as the company was, and not by her conduct to contribute to its occurrence. And the argument is, that it appears from her own testimony that the place was a difficult one to get down, and that she would encounter some danger in attempting to jump in an oblique manner that distance to the platform ; and that by so doing she made what she saw and knew to be a dangerous experiment, and resolved to take the responsibility of the act, and thereby received the injury complained of. The company, therefore, it is said, should not be responsible, if she saw fit to imperil her life or limb, and make a jump which, under the circumstances, her own senses told her was dangerous. The case of *Siner v. The Great Western R. R. Company*, (3 Law Reports, Exchequer, p. 150), is relied on in support of this position. In that case an excursion train, in which the plaintiffs (husband and wife) were passengers to Rhyl, arrived at Rhyl station, and, the train being a long one, the carriage in which they were, overshot the platform. It was then daylight. The passengers were not warned to keep their seats, nor was any offer made

to back the train to the platform, nor was it, in fact, ever so backed, nor did it move until it started for Bangor. After waiting awhile, the husband, following the example of other passengers, alighted, without any request to the company's servants to back the train, or any communication with them. The wife, standing on the iron steps of the carriage, took both his hands and jumped down, and in so doing strained her knee. There was a foot-board between the iron step and the ground, which she did not use, but there was no evidence of any carelessness or awkwardness in the manner of descent, except such as might be inferred from the above facts. The court held that there was no evidence for the jury of negligence on the part of the company; that the accident was entirely the result of the plaintiffs' own acts; and that it was the duty of the passengers, if the place was in fact dangerous, to request that the train might be put back, but not to attempt to alight in the manner they did. KELLEY, C. B., gave a dissenting opinion, in which he makes use of the following remarks, which we consider sound, and quite apposite to the case at bar. He says: "It is said that the cause of the accident was not the distance, but the awkward and careless mode in which the plaintiff jumped down. This again was for the jury; but the fair result of the evidence is, that though an adult male could have jumped down easily, yet a female passenger would encounter some danger in descending. But then the alternative is presented, that, if it was dangerous to descend, she ought to have returned to her place in the carriage. I am clearly of opinion, however, that a railway company are not entitled to expose any passenger to the necessity of choosing between two alternatives, neither of which he could lawfully be called on to choose: namely, either to go on to Bangor, or to take his chance of danger and jump out; and if they do so, the choice is made at their peril. I agree that if it can be clearly seen by the passenger

that the act must be attended with injury, it may then be fairly contended that he is not entitled to choose this obviously and certainly dangerous alternative. But what were the facts of the case? The distance to be descended was three feet, and a lady might very reasonably say she would encounter the risk. Nine out of ten might have done it with safety; but on the other hand there was some danger, and such danger as the defendants were not entitled to expose her to. Although, if the danger were certain, as from a pit or a stream of water lying below, a passenger who alighted in the face of that risk would be the author of his own evil; yet, when he is called upon to choose between two evils to which the neglect of the company has exposed him, and one of which presents some degree of danger, but not such as he may not without imprudence encounter, if, in consequence of his adopting that alternative, he suffers any injury, that injury is the proper subject of an action against the company."

It appears to us that this view of that case, taken by the chief baron, is far more sensible and satisfactory than the one held by the majority of the court. And it certainly furnishes all the answer necessary to be given to the argument we have been considering. For *Mrs. Delamatyr*, though she saw that the place was dangerous, yet knew that her sister had alighted in safety; and she might naturally suppose that she could do the same. And her effort to jump upon the platform from the steps of the cars ought not, under the circumstances, to be imputed to her as an act of negligence. See the case of *Fay v. Railway Co.*, 114 Com. Bench, 225, which is quite in point.

On the whole record we think the judgment is right, and that it must be affirmed.

*By the Court.* — Judgment affirmed.