No. 13,337.

The Louisville and Nashville Railroad Company v. Crunk.

Railroad.—*Personal Injury.*—*Complaint.*—*Motion to Make Specific.*—Where a complaint against a railroad company to recover for personal injuries alleges that the injuries were caused by the defendant suddenly and greatly increasing the speed of its train while the plaintiff was in the act of stepping off at a depot platform, it is not error to overrule a motion to make the complaint more specific by stating what agent or employee, and what acts of such agent or employee, caused the sudden increase of speed.

Same.—*Alighting from Moving Train.*—*Negligence.*—There is no conclusive legal presumption that one who voluntarily alights from a moving train is guilty of such negligence as will defeat an action for injuries, but the question as to whether the act constitutes negligence is to be determined by the jury upon a consideration of the rate of speed the train had acquired, the place, and all the circumstances connected with the act of alighting.

Same.—*Sick Passenger.*—*Carrying into Train.*—*Obligation of Company to Assistants.*—*Opportunity to Alight.*—Where a passenger is so sick and enfeebled as to make it necessary for assistants to carry him from the station to a seat in the train upon which he has secured passage, the railroad company, having contracted to carry him with knowledge of his condition, is bound to allow him the required assistants, and is under an obligation to stop the train long enough to afford the persons aiding

The Louisville and Nashville Railroad Company *v.* Crunk.

such passenger, although their services are voluntarily offered, a reasonable opportunity to leave the train, the same as if they were passengers.

SAME.—*Sudden Increase of Speed.*—*Injury to Person Alighting.*—Where one enters a train at a station to assist in carrying into a car a sick passenger whom the railroad company has contracted to carry, and while in the car the train is started before he has had a reasonable time to get off, yet at a rate of speed so slow as to enable him to alight in safety, but after he has reached the platform of the car and is in the act of alighting the speed is so suddenly and greatly increased, through the negligence of the trainmen, as to throw him off and injure him, the company is liable.

VERDICT.—*Answers to Interrogatories.*—*Judgment Upon.*—It is only where there is a direct conflict between the general verdict and the facts found by the jury in their answers to interrogatories that a motion for judgment on the answers, notwithstanding the general verdict, will be sustained.

From the Vanderburgh Circuit Court.

*S. B. Vance, J. M. Shackelford* and *W. J. Wood,* for appellant.

*A. P. Hovey, G. V. Menzies* and *W. Loudon,* for appellee.

OLDS, J.—This is an action by the appellee against the appellant for damages resulting from injuries to the appellee by reason of the negligence of appellant's employees in failing to stop a passenger train at a railway station a sufficient length of time to allow appellee to get off in safety, and in suddenly accelerating the speed of the train when appellee was in the act of stepping off.

As some question is made as to the negligence charged in the complaint, we state the principal averments, which are as follows : That the defendant, before and at the time of the grievances complained of, was, and now is, the owner of a railroad known as the Louisville and Nashville Railroad, running from the city of Evansville, Indiana, by and through the city of Mt. Vernon, Indiana, and other cities and towns, to the city of St. Louis, in the State of Missouri, and with their locomotive engines and trains of cars, moved and propelled by steam, were at said time engaged in carrying and conveying passengers over said railroad for hire, and said de-

fendant, on the 13th day of December, 1885, agreed and undertook for hire to carry over their said railroad, as a passenger, one George Naas from said city of Mt. Vernon to said city of St. Louis; that said Naas was at said time, from long protracted sickness, so weak and infirm in body as to be unable to rise from his bed without assistance, of which sickness and infirmity of the said Naas the defendant at the time aforesaid had due notice; that, by reason of said infirm and feeble condition of said Naas, it was at said time necessary for him to be carried from the station of the defendant at Mt. Vernon and placed upon the cars of the defendant for the purpose of commencing said journey to St. Louis; that the plaintiff, with other friends of said Naas, undertook to assist in carrying said Naas at said time from the station of the defendant at Mt. Vernon and to place him upon the cars, at the time ready for the reception of passengers at said place, the defendant at the time agreeing with and promising said Naas, of which agreement and promise the plaintiff had knowledge before he took upon himself said charge and burden aforesaid, that the defendant would stop its locomotive engine and cars at said station a sufficient length of time not only to permit the said Naas to be carried aboard the said cars by the plaintiff and other friends of said Naas, but also a further time sufficient for the plaintiff and other assistants to leave the cars in safety; that, upon the arrival of said defendant's train of passenger cars at their station at Mt. Vernon on said day, none of the defendant's servants, agents or employees aided, or offered to aid, in carrying said Naas on board of the said defendant's cars, and thereupon the plaintiff, with the assistance of two other friends of said Naas, relying upon said promise and agreement of said defendant so made with said Naas, and by him theretofore communicated to plaintiff, forthwith proceeded, in the presence and view of the defendant's agents and servants who had charge and control of said train, to carry, and did with the utmost dispatch carry, said Naas from said station and place

The Louisville and Nashville Railroad Company *v.* Crunk.

him upon one of the cars of the defendant, to be by the defendant carried as a passenger over its said railroad to said city of St. Louis, in pursuance of its agreement; that, upon placing said Naas on board of said car, the plaintiff and said other assistants immediately thereafter proceeded to leave said car without delay; that the defendant caused its said locomotive engine and train of cars to be slowly moved forward at the instant the plaintiff and the other assistants began leaving said car; that said other assistants stepped from said car upon defendant's platform at said station while said cars were slowly moving forward as aforesaid, without difficulty and without injury; that he, the said plaintiff, was following so closely behind said other assistants when they so stepped off that he could easily have laid his hand upon them, and was making reasonable haste in getting off said car, as the defendant then and there well knew, but at the instant he was in the act of stepping off the lower step of the platform of said car upon the platform of said station, the defendant negligently and wrongfully caused the motion of said car to be suddenly and greatly accelerated, by reason whereof the plaintiff was, without any fault or negligence on his part, thrown violently upon and from the platform of said station, and upon the track of the defendant's railroad, and the said cars of the defendant, without any fault or negligence on his part, ran upon and over his right foot and ankle, crushing the bones thereof to such an extent as that four of his toes had to be amputated. Then follow further allegations as to the nature and extent of the injury.

There was a demurrer filed to the complaint, and overruled, and that ruling is assigned as error, but it is not discussed by counsel and is therefore waived.

The appellant filed a motion to require the appellee to make the complaint more specific, by stating and showing what agent or employee of the defendant caused the motion of the cars to be suddenly and greatly accelerated, and what

Vol. 119.—35

acts of such agent caused the motion of the cars to be suddenly and greatly accelerated; also, that he be required to show how, or in what respect, such acts of said agent were negligent and wrongful. The motion was overruled, and this is complained of as error. The motion was properly overruled. The pleading must be construed in the light and knowledge possessed by mankind of the manner and by whom passenger trains are run and operated, and the allegations of the complaint are to be treated as relating to and meaning the employees and agents of the defendant running and operating the train of cars, and are sufficiently certain and specific. Furthermore, the plaintiff is not bound to plead facts which are peculiarly within the knowledge of the defendant.

The appellant moved for judgment in its favor on the special findings, notwithstanding the general verdict; this motion was overruled, and the ruling assigned as error.

The answers to interrogatories showed the following facts: That the plaintiff went upon the train to assist Naas, at the request of the family; that the train was in motion before plaintiff left the car in which Naas was seated, and when he was upon the platform for the purpose of leaving the train, and that plaintiff knew it was in motion; that the train was moving at the rate of four and one-half miles an hour when plaintiff got on the lower step for the purpose of alighting from the train.

The answers to the fourth and fifth interrogatories are conflicting. The fourth interrogatory and answer are to the effect that neither the conductor nor engineer, in charge of the train and engine, knew that plaintiff was on the steps of the car, or that he purposed leaving the train, or that he was in the act of alighting from the train at the time he did attempt to leave it. Interrogatory five and answer are to the effect that the conductor knew that the plaintiff was on the train when it started and that he purposed leaving the train before he had left it. This leaves the interrogatories showing this state

of facts, viz.: That plaintiff went upon the train to help Naas, at the request of Naas' family; that the train was in motion before he left the car, and continued in motion until plaintiff got on the step for the purpose of leaving, and that he knew the train was in motion; that when he was upon the lower step for the purpose of alighting from the train, the train was moving at the rate of four and one-half miles an hour, and that the conductor knew plaintiff was on the train, but did not know he was upon the steps of the car, or was in the act of alighting, when he made the attempt to leave the train.

The answers to interrogatories did not entitle the appellant to judgment. It is only where there is a direct conflict between the general verdict and the interrogatories and answers thereto, and where the facts found by the answers to the interrogatories entitle the party in whose favor they are to a judgment, that a motion for judgment on the answers to interrogatories, notwithstanding the general verdict, will be sustained. *McClure* v. *McClure*, 74 Ind. 108; *Grand Rapids, etc., R. R. Co.* v. *McAnnally*, 98 Ind. 412.

In the case of *Baltimore, etc., R. R. Co.* v. *Rowan*, 104 Ind. 88, 96, it is held that all reasonable presumptions are indulged in favor of the general verdict, while nothing will be presumed in favor of the special findings. Under these well settled principles, which have been universally adhered to by this court, there was no error in overruling appellant's motion for judgment on the answers to interrogatories, notwithstanding the general verdict. All the facts established by the answers to the interrogatories might be true, and yet the appellee entitled to recover.

It is insisted by counsel for appellant that the answers to interrogatories show that the train of defendant was in motion before the plaintiff left the car in which said Naas was seated, and when the plaintiff came upon the platform of said car, and when he got on the steps of said car for the purpose of leaving it, as was known to him, and that when

plaintiff reached the lower step for the purpose of alighting from the train it was moving at a speed of four and one-half miles per hour; and that the law is, that when a railroad station has been announced, and the train has been stopped, there is an invitation to passengers to alight, and an implied promise, and an obligation, that the stop shall be long enough to give all passengers a reasonable time to leave the train in safety, but after the train has started from the station, and especially when it has obtained a speed which proclaims to every one that the movement is final, there is no longer an invitation to any one to leave the train, and one who thus attempts to leave it does so without the invitation or consent of the railroad company, and at his own risk; that the effect of the finding in this case was, that the train had acquired such speed at the time the appellee alighted as to proclaim to every one that the movement was final, and that the alighting under such circumstances is a conclusive presumption of contributory negligence and the appellee can not recover, and it was the duty of the court to render judgment in favor of appellant; that when the facts show the train to have been moving at the rate of four and one-half miles an hour when a person alights from the train, the court shall declare, as a matter of law, that such act of alighting is negligence, and that the person can not recover though injury may have resulted to him by reason of the negligence of the employees of the railroad company.

We do not concur in this theory of counsel. The fact that a person voluntarily alights from a moving train is not a conclusive presumption of negligence on his part. The rate of speed the train has acquired, the place, and all the circumstances connected with the alighting, are to be taken into consideration in determining whether or not the person was guilty of negligence on his part in leaving or attempting to leave the train. The degree of speed which would of itself make the person guilty of negligence in one case, and under some circumstances, would not under others. We do not

mean to say that the court would not hold that a person who voluntarily left a passenger train when in full speed was not guilty of negligence, and that such act alone would be construed to constitute such contributory negligence as that he could not recover for injuries received; but like crossing the railroad track, while it might be negligence to attempt to cross the track with horses and vehicles, when the train was within a few rods running at high speed, it might not be when the train was at a much greater distance and running at a less rate of speed, though it was in sight. It might be negligence to attempt the crossing of a track with horses and a vehicle, when it would not be to do so on foot. So, too, what one in the full vigor of manhood might do with perfect safety, might be hazardous for one who is decrepit with age or in an enfeebled condition. Whether alighting from a moving train constitutes negligence or not is a fact to be determined by the jury trying the cause, taking into consideration all the circumstances in connection with the alighting.

In this case the passenger Naas being in an enfeebled condition, requiring the assistance of others to carry him upon the train and place him in a seat, the defendant's employees having knowledge of his condition, and observing others carrying him into the car, they owed an obligation to those assisting and carrying him into the car to allow the train to remain standing a sufficient time to allow them a reasonable opportunity to leave the train, and to those whose assistance was necessary, and whose services in that behalf were accepted by the passenger Naas, the company owed the same duty in allowing them a reasonable time to leave the train as it would had they been passengers upon the train, though they voluntarily offered their services.

In the case of *Evansville, etc., R. R. Co.* v. *Duncan,* 28 Ind. 441, at p. 447, the court, in speaking of a person leaving a train while in motion, says: "If the leap was made under such circumstances that a person of ordinary caution and care

would not have apprehended danger therefrom, then it was not such an act of carelessness as would relieve the defendant from the responsibility otherwise resting upon it." And this statement of the law by the court is quoted and approved in the case of *Jeffersonville, etc., R. R. Co.* v. *Hendricks,* 41 Ind. 48. In the case of *Ohio, etc., R. W. Co.* v. *Collarn,* 73 Ind. 261, the court states the rule as to when the question of negligence should be submitted to a jury. See, also, *Pennsylvania Co.* v. *Long,* 94 Ind. 250 ; *Town of Albion* v. *Hetrick,* 90 Ind. 545.

The first cause assigned for a new trial was the giving by the court, at the request of the plaintiff, instructions one, two, three and five. We set out some of the instructions. Number one is as follows :

" 1. If you believe from the evidence that at the time mentioned in the complaint the defendant, for hire, agreed to receive and did receive on board its train of cars at its passenger station at Mt. Vernon, Indiana, one George Naas, as a passenger, and that the defendant had knowledge that said Naas was at the time so sick and feeble as to render it necessary for him to be carried into defendant's car, and the conductor of said train, then present, had knowledge, or had reasonable grounds to believe, that the plaintiff entered said car as an assistant in carrying said Naas therein and in seating said Naas in said car, then you may find that the plaintiff rightfully entered said car, and that the defendant owed the plaintiff the same duties, while he was rendering said assistance to said Naas, and while he was leaving said car, that it would owe to any of it passengers for hire."

This instruction was proper. The defendant, in contracting to carry the passenger Naas in his sick and enfeebled condition, contracted an obligation which could only be carried out by Naas being carried upon the train and seated in the car. By thus contracting to carry Naas as a passenger, it took upon itself the obligation of allowing him assistants to place him upon the train and seat him in the car, and the

compensation received by the defendant for conveying Naas from Mt. Vernon to his destination included as well the right to have assistants place him in the car as the carrying him after being so placed in the car, and the defendant owed the same obligation to his assistants while necessarily entering and leaving the car with Naas as it owed to Naas himself.

Instruction No. 2 states the legal obligation of carriers of passengers for hire, and it is not erroneous in connection with the other instructions.

Instruction No. 3 : " If you find from the evidence in this case, and under the instructions I have given you, that the plaintiff rightfully entered the car at its station at Mt. Vernon, as an assistant in carrying said Naas into said car, and the conductor of the train of which said car was a portion knew, or ought to have known at the time, that the plaintiff had, in the capacity of such assistant, entered said car, then you should find that it was the duty of the defendant to cause said car to remain stationary at said station such a length of time as would, in your judgment, under all the circumstances proved, be sufficient to enable the plaintiff to leave the car while it was thus standing; and if you find that the train was started by defendant before such reasonable time had elapsed, and that the plaintiff attempted to leave the car while in motion, but while the motion thereof was yet slow, that a person of ordinary caution and prudence would apprehend no danger in stepping therefrom, and that when the plaintiff was in the act of stepping from the steps of the car platform to the station platform, if you should so find, the motion of the train was suddenly increased by the fault and negligence of the employees of said road, and that by reason of such sudden increase of speed the plaintiff was thrown on to the track of the defendant and received the injury complained of, you will find for the plaintiff, unless you further find that he was guilty of want of ordinary care and prudence which directly contributed to produce the injury."

This was a proper instruction, and applicable to the issues in the case. The complaint alleges the contract to carry Naas, in his sick and enfeebled condition, the necessity for assistants, and knowledge of such facts on the part of the defendant; that the plaintiff entered the car as an assistant to Naas. ˙ It fairly appears that the train failed to remain standing a sufficient time for the plaintiff and other assistants to leave the car, and that it moved slowly as plaintiff was leaving the car, so that he could have alighted in safety had it not been for the fall. When he was upon the step in the act of alighting, there was a sudden acceleration of speed, caused by the negligence of the employees of defendant operating and running the train, by reason of which plaintiff was thrown violently upon and from the platform and upon the track and run over, without fault on his part. And this instruction is based upon the same theory; that if the plaintiff rightfully entered upon the car as an assistant of Naas, and the conductor knew it, or had reason to know it, he should have allowed the train to remain stationary a sufficient length of time for plaintiff to have left the train; and if he failed to do so, and started the train slowly, and continued to run so slowly that a person of ordinary prudence and caution would have apprehended no danger in stepping therefrom, and while the car was thus moving, and the plaintiff was in the act of stepping off on to the platform of the depot, the employees, carelessly and negligently, suddenly accelerated the speed of the car, and by reason of such sudden increase of speed plaintiff was thrown on the track of the defendant and received the injury complained of, the defendant would be liable, unless the lack of ordinary care or prudence of plaintiff directly contributed to the injury.

The fifth instruction states the law properly as to the amount of recovery in the event the jury find for the plaintiff, and is not erroneous.

The next error assigned is the refusal of the court to give instructions one, two and eight requested by the defendant.

They all proceed upon the theory that if the plaintiff knew the train was in motion, and to avoid being carried from Mt. Vernon attempted to leave the train, and such attempt caused or contributed to the injury, he had no right to recover.

We can not adhere to the doctrine that the attempt to voluntarily leave a moving train, regardless of the speed and circumstances under which the attempt is made, is negligence *per se*, and if injury occurs in alighting, by reason of the negligence of the employees of the railroad company, that there can be no recovery. Though that doctrine has been held in some cases, yet it is in opposition to the decisions of this court hereinbefore cited, and we think against the best considered cases of other States.

In the case of *New York, etc., R. R. Co.* v. *Coulbourn*, 69 Md. 360, the court says: "The court rejected the defendant's fourth prayer, and in doing so we think it committed no error. By that prayer the court was asked to instruct the jury, that if they should find that the car was moving at least at the rate of five miles an hour, at the time the plaintiff jumped therefrom, then such act of the plaintiff was negligence on his part, and their verdict should be for the defendant. This prayer excluded from consideration all the facts and circumstances of the case, under which the plaintiff acted, except the single fact that he jumped from the car when it was moving at the rate of five miles per hour; and if the jury should find that fact, then, the court was asked to say as matter of law, there was such negligence on the part of the plaintiff as would preclude his right to recover, without regard to the other facts of the case. But, in our opinion, all the facts and circumstances of the case were properly left to the consideration of the jury; and it was for them to determine, as matter of fact, whether the plaintiff, in jumping from the car, acted as a reasonably cautious man would do, under like circumstances." *Cumberland Valley R. R. Co.* v. *Maugans*, 61 Md. 53; *Filer* v. *New*

*York, etc., R. R. Co.,* 49 N. Y. 47 ; *Pennsylvania R. R. Co.* v. *Kilgore,* 32 Pa. St. 292 ; *Clemens* v. *Hannibal, etc., R. R. Co.,* 53 Mo. 366 ; *Delamatyr* v. *Milwaukee, etc., R. R. Co.,* 24 Wis. 578 ; *Strauss* v. *Kansas City, etc., R. R. Co.,* 14 Cen. Law J. 355.

It is proper to consider the further question as to whether there was evidence to support the verdict of the jury, and whether the charges given by the court were applicable to the evidence. We have examined the evidence. There was evidence from which the jury might have reasonably found that Naas was sick, and in such a feeble condition as to require assistants to carry him on board the cars ; that defendant's employees had knowledge of his condition at the time of selling him a ticket and contracting to carry him, and that the conductor was notified and saw the assistants carrying him into the cars, and was directed by the agent to give plenty of time ; that no time was given to the assistants to leave the train ; that the train was in motion by the time Naas was seated ; that the train moved slowly until plaintiff was on the steps and in the act of stepping from the train, when the speed was suddenly increased ; some witnesses describe it as moving with a lunge, others with a sudden motion, others that it started suddenly ; and that the other assistants, just in front of plaintiff, landed safely. It may have been fairly found that the suddenly increased motion of the car threw the plaintiff upon the track, and that had it not been for that he would have landed safely, and that the employees were guilty of negligence in so moving and running the train.

There is no error in the record for which the judgment should be reversed.

Judgment affirmed, with costs.

Filed April 20, 1889; petition for a rehearing overruled June 27, 1889.