## PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY v. BOYS.

[No. 9,790. Filed June 3, 1919. Rehearing denied October 7, 1919.]

1. CARRIERS.—*Carriage of Passengers.—Injuries to Passenger.— Action. — Complaint. — Sufficiency. — Negligence.* — In an action against a railroad company by a passenger for injuries sustained in alighting from a moving train at a flag station, a complaint alleging that the injuries resulted from the negligence of defendant in not stopping the train as scheduled and advertised, and on account of the brakemen leading plaintiff to believe that the train had come to a full stop, *held* to show negligence on part of defendant. p. 106.

2. CARRIERS.—*Carriage of Passengers.—Injuries to Passengers.— Action.—Complaint Showing Contributory Negligence.—Sufficiency.*—In an action against a railroad company for injuries sustained by a passenger in alighting from a moving train at a flag station, paragraph of complaint *held* to show plaintiff guilty of such negligence as to preclude recovery. pp. 106, 107.

3. CARRIERS.—*Carriage of Passengers.—Injuries to Passenger.— Contributory Negligence.—Alighting from Moving Train.*—It is not negligence *per se* for a passenger to alight from a moving train. p. 107.

4. JUDGMENT.—*Motion in Arrest.—Insufficiency of Complaint.— Failure to Raise Question by Demurrer.—Statute.*—In an action for personal injuries, where defendant failed to present the question by demurrer whether the first paragraph of complaint showed that plaintiff was guilty of negligence proximately causing his injury, the right to raise that question by a motion in arrest of judgment is denied by §344 Burns 1914, Acts 1911 p. 415, and there was no error in overruling the motion. p. 111.

5. CARRIERS.—*Carriage of Passengers.—Destination of Passenger. —Notice to Carrier.*—There is no primary obligation on a passenger for a flag station to notify the train conductor of his destination, as stipulated in his ticket, before the arrival of the train at such point, in the absence of a rule of the carrier, known to the passenger, requiring that such notice be given. p. 114.

6. CARRIERS.—*Carriage of Passengers.—Destination of Passenger. —Notice to Carrier.*—In the absence of a rule of the company, so known and promulgated as to bind the passenger, requiring a passenger for a flag station to notify the train conductor of

his destination, as stipulated in the ticket, before the arrival of the train at such point, the ticket sold by the carrier to the passenger is conclusive notice to the former of the fact of the passenger's destination. p. 114.

From Grant Superior Court; *Robert M. Van Atta,* Judge.

Action by Clifford C. Boys against the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*George E. Ross,* for appellant.
*E. H. Graves* and *G. A. Henry,* for appellee.

McMahan, J.—The appellee's complaint is in two paragraphs. In the first it is alleged that appellant is a corporation engaged in the operation of a railroad passing through Gas City and Upland; that appellee purchased a ticket from appellant's agent at Gas City entitling him to be carried from Gas City to Upland; that he took passage on a train leaving Gas City at 2:17 a. m., scheduled and advertised to stop at Upland on flag to take on and discharge passengers. It is then averred: "That as said train approached the station at Upland, it began to slow down, and that he, the plaintiff, believing that it would come to a full stop as it was scheduled and advertised and as the defendant company had agreed, went to the front end of the car in which he was riding and the brakeman on said train being then and there in the employ of this defendant company said to this plaintiff, 'Do you get off here?' and, being answered in the affirmative, the said brakeman opened the door of said car and said, 'All right,' and it being in the nighttime and dark and there being no

light at said station and this plaintiff being led to believe that said train had come to a full stop and relying on what had been told him by the said brakeman and the promise of said defendant company, stepped from said car, but on account of said defendant company not bringing said train to a full stop as it had agreed and as this plaintiff was led to believe and did believe, said plaintiff was thrown on the brick walk along the side of defendant's tracks, his head, face and ear were cut, scratched and bruised, his shoulder and back were cut, scratched, bruised and sprained and he was rendered unconscious. * * *Plaintiff further avers that all of the injuries herein complained of were caused by the negligence of this defendant company in not stopping said train as it had scheduled, advertised and agreed to do and on account of the said company, through their said brakeman leading him, the plaintiff, to believe that said train had come to a full stop and that he, the plaintiff, was wholly without fault. Wherefore,'' etc.

The second paragraph, after alleging that appellant is a corporation engaged in the operation of a railroad, the purchase of a ticket by appellee, and the taking passage as alleged in the first paragraph, alleges that: ''As said train approached said town of Upland it began to slow down and the plaintiff believing that it would come to a full stop as it was scheduled and advertised by defendant to do, left his seat in said train and went forward to the front end of the car in which he was riding, and that an employe of said defendant, the brakeman upon said train, said to this plaintiff, 'Do you get off here,' and upon the plaintiff answering in the affirmative, said brakeman opened the door of said car and said to the plaintiff,

'All right.' Said plaintiff avers that it was in the nighttime and that there were no lights displayed at said station and that it was dark at the point where passengers were accustomed to alight from trains at said station, and this plaintiff being led to believe from the said remarks and action of said brakeman that said train would come to a full stop went upon the platform and steps of said car for the purpose of alighting therefrom but he says that said train did not come to a stop at said station of Upland as he had a right to believe that it would, but after slowing down the speed of the train as aforesaid, said defendant through its employes, began to increase the speed of said train and this plaintiff seeing that he would be carried thus past his station, and while said train was running slowly and not to exceed five miles per hour, he stepped therefrom to the platform of said station and it being dark and being unable to see his way, said plaintiff by the motion of said train was thrown violently upon the said platform which was of brick and fell thereon with great force, and by reason of said fall'' was injured, the alleged injuries being set out in detail. It is also alleged that the injuries were occasioned through the negligence of the appellant in the careless and negligent operation of the train and in not bringing it to a full stop at Upland.

Appellant filed a demurrer to each paragraph of complaint, which was overruled and exception saved.

There was a trial by jury, verdict and judgment for appellee. The jury was required to and did answer a number of interrogatories which they returned with their general verdict.

The errors relied on for reversal are the overrul-

ing of the demurrer to each paragraph of complaint, the overruling of a motion in arrest of judgment, and the overruling of the motion for a new trial.

The only objection made to the first paragraph of complaint is that no facts are alleged to show that appellant was guilty of any negligence. We cannot agree with appellant. This paragraph clearly shows negligence on the part of appellant. All other objections to this paragraph are waived. There was therefore no error in overruling the demurrer to it.

The appellant next insists that the facts alleged in the second paragraph of complaint show, among other things, that the appellee was himself guilty of negligence which was the proximate cause of his injury. According to the averments of this paragraph of complaint, as the train approached the town of Upland it began to slow down, and plaintiff, believing that it would come to a full stop, left his seat and went to the front end of the car in which he was riding, when the brakeman on the car asked him if he got off there, and, on receiving an affirmative answer, opened the door of the car and said, "All right"; that it was about 2:30 a. m.; that the night was dark; that no lights were displayed at the station; that appellee was led to believe from the remarks and action of the brakeman that the train would stop, and that he went upon the platform and the steps of the car for the purpose of alighting; that the train did not stop; that its speed was increased, and that appellee, believing that he would be carried past the station, and while the train was running not more than five miles an hour, stepped off the train to the platform of the station

at a time when it was so dark that he could not see his way, and that by the motion of the train was thrown violently upon the brick platform with sufficient force to severely injure him and to render him unconscious.

Do these facts show negligence on the part of appellee which was the proximate cause of his injury?

3. The law is well settled in this state that it is not negligence *per se* for a passenger to alight from a moving train. The circumstances and conditions under which he acts must all be considered. Each case must be determined on its own facts. *Pittsburgh, etc., R. Co.* v. *Miller* (1904), 33 Ind. App. 128, 70 N. E. 1006; *Harris* v. *Pittsburgh, etc., R. Co.* (1904), 32 Ind. App. 600, 70 N. E. 407; *Louisville, etc., R. Co.* v. *Crunk* (1889), 119 Ind. 542, 21 N. E. 31, 12 Am. St. 443.

2. If the facts pleaded show that the appellee was at fault in leaving the train as he did, and that he thereby contributed to his injury, then the demurrer should have been sustained. The pleading discloses that the plaintiff voluntarily left the train while it was in motion. The only excuse he gives for so doing is that he saw the speed of the train was being increased and that he would be carried past the station where he wished to get off the train. He does not allege that anything was said or done by any of the employes of appellant that induced him to alight. The only thing the employes did, according to his complaint, was to lead him to believe that the train would stop. The conversation with the brakeman, which he says caused him to so believe, took place when he left his seat and went to the front end of the car in which he was

riding, when the brakeman asked, "Do you get off here," and being answered in the affirmative, opened the door and said, "All right." This all took place while appellee was yet in the car, just before or at the time that the brakeman opened the door. The act of the brakeman in opening the door and saying, "All right," cannot be construed as an invitation for appellee to alight before the train came to a standstill. The most appellee claims is that he, being thereby led to believe "that the train would come to a full stop, went upon the platform and steps of the car for the purpose of alighting therefrom," as we understand him to mean, when the train should come to a full stop. Nothing else was said or done by the brakeman. The appellee, without anything more being said or done, walked out of the car, down the steps, and alighted from a moving train in the nighttime when it was so dark that he could not see his way. The appellee knew the train had not stopped, he knew the speed was being increased, and, believing he would be carried past his station, stepped off.

There is but one conclusion to be drawn from the facts pleaded. The appellee was guilty of such negligence as will preclude a recovery. The demurrer to the second paragraph of complaint should have been sustained. *Pittsburgh, etc., R. Co.* v. *Miller, supra.*

As said in the case just cited, the facts differentiate this case from those in which the train is not stopped a sufficient time to allow the passenger to leave it, from those in which he is invited or directed by the trainmen to alight, and also from those in which the passenger's action is influenced by his tender age or other incapacity.

This paragraph of complaint is very like the first paragraph of complaint in *Jeffersonville, etc., R. Co. v. Swift* (1866), 26 Ind. 459, which the court held bad, saying: "It admits that the plaintiff voluntarily leaped from the cars while they were in motion—running at the rate of one-third their usual speed—and by reason thereof received the injuries complained of, and the only excuse alleged for this extremely imprudent and perilous act is, that the train was being run past *Amity*, where he wished to leave it, and where it was the duty of the conductor to stop the train and let him off. These facts, however, do not afford a justification for so rash an act as that of leaping from the train when in motion. *Jeffersonville Railroad Company* v. *Hendricks, Adm'r, ante* p. 228. Admitting that those having charge of the train, in negligent disregard of their duty, were running it past the station, and that they did not intend to stop there, still, the paragraph shows that the injury to the plaintiff was the immediate result of his own imprudent and rash conduct; and there is no principle of the law more clearly settled, or more universally recognized by all the courts, than that in suits for such injuries, though the defendant may have been guilty of negligence, yet if the plaintiff's own want of reasonable care and caution directly contributed in producing the injury, he cannot recover."

In *Reibel, Admx.,* v. *Cincinnati, etc., R. Co.* (1888), 114 Ind. 476, 17 N. E. 107, the complaint was held insufficient, the court saying: "The general rule is, that passengers who are injured while attempting to get upon or off a railroad train while it is in motion cannot recover for their injuries. * * * To

this general rule, some exceptions have been recognized, one of which is where the passenger is either ordered or invited by the company or its agents to get on or off, notwithstanding the motion of the train. *Cincinnati, etc., R. R. Co.* v. *Carper*, 112 Ind. 26; *Lake Shore, etc., R. W. Co.* v. *Pinchin*, 112 Ind. 592; *Evansville, etc., R. R. Co.* v. *Duncan*, 28 Ind. 441. But a passenger must not attempt either to get onto or off a train while it is in motion, if it be obviously dangerous to make the attempt, although he may have been advised, or even ordered, to do so by the servants of the company. 2 Wood Railway Law, 1127. Such an attempt is at the peril of the passenger, when he is a person of ordinary intelligence and not acting under constraint. While it is the plain duty of a railroad company to stop its train at the place of a passenger's destination long enough to permit him to get off with safety, the fact that a train is about to pass such place of destination without stopping does not justify the passenger in incurring any serious risk by jumping from the train. In such a contingency, the passenger's remedy is against the company for carrying him past his place of destination.''

In *England* v. *Boston, etc., Railroad* (1891), 153 Mass. 490, 27 N. E. 1, the court said: ''The plaintiff acted on the belief that the train had stopped when it had not stopped, and this mistake was due to her own omission to use reasonable care. The fact that it was dark where she attempted to alight rendered more caution not less necessary on her part. To step off of the train where it was, as the plaintiff's husband testified, 'so dark that a person couldn't see where he or she was going,' under circumstances that

did not amount to an invitation on the part of the defendant to do so, or an assurance that it was safe to do so, and where no necessity existed for doing it, was of itself a contributory act of carelessness on the part of the plaintiff.''

And in the case of *East Tennessee, etc., R. Co.* v. *Holmes* (1893), 97 Ala. 332, 337, 12 South 286, 288, the court said: "He made the leap of his own accord, at great peril to his life and limb, because, as it would seem, he did not desire to be carried beyond his destination. He thus took the risk of his own reckless venture, and the defendant ought not to be made to pay for it. There was not even the excuse of necessity for his having done so. * * * No one has the right to leap from a moving train, because he is being carried beyond his destination, with the expectation of claiming from the railroad company damages for any injury he may sustain. His duty is to remain aboard, and demand redress for the injury that may have been done to him.'' See, also, *Toledo, etc., R. Co.* v. *Wingate* (1895), 143 Ind. 125, 37 N. E. 274, 42 N. E. 477.

The next assignment of error is that the court erred in overruling the motion in arrest of judgment, the contention of appellant being that both paragraphs of the complaint show that appellee was guilty of contributory negligence which was the proximate cause of his injury. It is a sufficient answer to this objection to say that the appellant did not present this question by the demurrer addressed to the first paragraph of complaint, and, not having done so, the right to raise the question by a motion in arrest of judgment is denied by §344 Burns 1914, Acts 1911 p. 415. There was no error in overruling the motion in arrest of judgment.

Appellant also contends that the court erred in giving certain instructions to the jury. Instruction No. 3, given at the request of appellee, is as follows: "I instruct you that there is no legal obligation upon a passenger upon a regular railroad passenger train to notify the conductor of such train of his point of destination. The railroad company by the sale of a ticket to such a passenger already knows his destination and the conductor of its train is but the servant of such company and is bound by its knowledge. So, in this case, if you believe from the evidence that the plaintiff bought a ticket for the town of Upland, Indiana, of the defendant's agent at Gas City, and with said ticket went upon a passenger train of the defendant for transportation to said town, I then instruct you it was the duty of the conductor of said train and of the other of defendant's employes and servants upon said train to know the destination of said plaintiff and to stop said train at said town of Upland a reasonable length of time to allow the plaintiff to alight therefrom."

Appellant insists that this instruction is erroneous, because it is not applicable to the evidence or relevant to the issues, is misleading, and invades the province of the jury. The contention of appellant is that it is the duty of a person going upon a train to make known to the conductor or person in charge of the train his destination, especially if his destination is a flag station where the train does not stop regularly.

In *Chattanooga, etc., R. Co.* v. *Lyon* (1892), 89 Ga. 16, 16 S. E. 24, 15 L. R. A. 857, 32 Am. St. 72, it was held that, when a railroad company sells a ticket to a flag station at which its trains do not stop unless signalled to do so for the purpose of receiving passengers, or when there are on board

passengers for such station, it is ordinarily the duty of the conductor to ascertain from the passenger before reaching such station that such is the passenger's destination, and to stop the train there for the purpose of allowing the passenger to leave the train. This rule, under special circumstances, is subject to exceptions. The Supreme Court of Georgia in the case last cited said: ''The holder of the ticket has, ordinarily, the right to assume, when he buys it, that the company will safely land him at his destination. Accordingly, he has the right to presume the conductor will call for his ticket before reaching the station specified, and thus obtain notice of the fact that he desires to stop at such station. * * * There may be circumstances under which a passenger for a flag station is carried beyond his destination when it would not be fair or just to attribute the fact to the company's negligence. In a recent Texas case, *Gulf C. & S. F. Ry. Co.* v. *Ryan,* 18 S. W. Rep. 866, it appeared that defendant in error bought a ticket to a flag station, knowing it was such and that trains did not stop there 'unless some request was made upon the conductor to do so.' It would seem that he bought the ticket subject to the condition that he must notify the conductor of his destination, and failing to do so, it was held he was not entitled to recover. Aside from instances like this, there may be other occasions, * * * when the conductor will be prevented, without fault on his part, from ascertaining in time the desire of a passenger to stop at a flag station, or when, under the circumstances, it is manifestly the duty of the passenger to see to it that the conductor has the necessary information. In cases of doubt as to which

should take the initiative, the question may very. properly be left to the jury.''

The general rule is that, in the absence of a rule of the carrier, known to the passenger, requiring the passenger for a flag station to notify the conductor of the train of his ticket-stipulated destination before arrival thereat, there is no primary obligation on such ticket passenger to notify the conductor of such passenger's destination. In the absence of such a rule, so known or promulgated as to bind the passenger, the ticket sold by the carrier to the passenger is conclusive notice to the carrier of ·the fact of such passenger's destination. *Louisville, etc., R. Co.* v. *Fuqua* (1914), 187 Ala. 464, 65 South. 396, 52 L. R. A. (N. S.) 668; *San Antonio, etc., Co.* v. *Dykes* (1898), (Tex. Civ. App.) 45 S. W. 758; *Missouri, etc., Co.* v. *Glass* (1907), 46 Tex. Civ. App. 126, 102 S. W. 447; *Chattanooga, etc., R. Co.* v. *Lyon, supra; Louisville, etc., R. Co.* v. *Seale* (1911), 172 Ala. 480, 55 South. 237; *Ft. Smith, etc., R. Co.* v. *Ford* (1912), 34 Okla. 575, 126 Pac. 745, 41 L. R. A. (N. S.) 745.

We are aware of the fact that there are cases where a different rule has been announced, but, as a rule, there were facts sufficient in each instance to distinguish such cases from the one now under consideration, such as a rule requiring the passenger to notify the conductor, knowledge on the part of the passenger that the train would not stop unless the conductor ·was notified. *Rock Island, etc., R. Co.* v. *Stevens,* (1907), 84 Ark. 436, 105 S. W. 1032, 108 S. W. 517, 16 L. R. A. (N. S.) 1132. We find no error in the giving of the instructions.

The judgment must be reversed, however, on ac-

count of the error in overruling the demurrer to the second paragraph of complaint.

Judgment reversed, with instructions to sustain demurrer to the second paragraph of the complaint, and for further proceedings not inconsistent with this opinion.