MORROW v. ATLANTA AND CHARLOTTE AIR LINE RAILWAY CO.

(Filed December 18, 1903).

1. CARRIERS—*Passengers—Trespasser.*

　A person who goes on a train for the purpose of assisting a passenger is not a trespasser, and is entitled to the protection of the company if its conductor has notice of his presence.

2. NEGLIGENCE—*Carriers—Passengers.*

　In this action to recover damages for injuries received from alighting from a train in motion, there is sufficient evidence of negligence on the part of the defendant company to be submitted to the jury.

3. CONTRIBUTORY NEGLIGENCE—*Carriers—Passengers.*

　The general rule is that a person who alights from a moving train is guilty of contributory negligence.

ACTION by C. R. Morrow, by his next friend, Thomas Carson, against the Atlanta and Charlotte Air Line Railroad Company, heard by *Judge Walter H. Neal* and a jury at September Term, 1903, of the Superior Court of GASTON County. From a judgment for the defendant the plaintiff appealed.

*A. G. Mangum,* for the plaintiff.
*G. F. Bason* and *F. H. Busbee & Son,* for the defendant.

WALKER, J. This action was brought by the plaintiff to recover damages alleged to have been caused by the defendant's negligence.

On the night of the 27th of August, 1902, the plaintiff, his wife, Thomas Carson and two other persons went to the defendant's depot at Gastonia with the plaintiff's sister, Mrs. York, and her six children, the oldest of whom was fifteen

years of age and the youngest four years of age, for the pur-
pose of assisting them in boarding the train, which they in-
tended to take that night for a distant point.   When the train
arrived, about 11 o'clock P. M., and after the passengers for
that station had alighted, the plaintiff and Thomas Carson
immediately assisted Mrs. York and her children to get on
the train, but before they could find a vacant seat for them
the train started and Carson ran to the door and then to the
platform and jumped off the train without injury.   When
the plaintiff, who followed him, was alighting from the steps
of the platform, with his hand on the railing, or, to use his
own words, when he let his feet down from the steps, there
was a sudden jerk of the car upon which he had been stand-
ing, which broke his hold; his foot struck a pile of mail sacks
which had been left on the ground near the crossing, and
about one hundred and fifty feet from the usual place where
passengers alighted, and plaintiff was thereby thrown under
the cars and severely injured.   As he and Carson and Mrs.
York and her children boarded the car, an employee of the
defendant, who had on a uniform and held a lighted lantern
in his hand, was standing near by and could see them as they
got on the train.   The plaintiff's wife bid Mrs. York and
her children good-bye and remained outside, but said nothing
to the plaintiff, her husband, or to Carson, her brother-in-law.
The latter was wearing his "every-day clothes."   None of
the defendant's employees offered to help Mrs. York to get on
the train.   It was usual and customary to give signals before
starting the train at that place by ringing the bell or by proc-
lamation of the conductor, namely, "All aboard!" but neither
the plaintiff nor Carson heard a signal of any kind that night,
though the usual signals might have been given without being
heard, as there were eight or nine cars in the train.   The
train moved off before any of the passengers who got on at
Gastonia could be seated.   Plaintiff did not see the conductor

or he would have told him that he intended to board the train in order to help his sister, but he expected that the usual signals would be given and that he would have time to leave the train with safety. When the plaintiff fell from the train it was running at the rate of "not more than three or four miles an hour." It had been customary for persons to be assisted in boarding the train at Gastonia by their friends or escorts, and it had frequently been done. One of the plaintiff's witnesses testified as follows: "I was the hotel porter and went to the depot that night to meet the train and saw a railroad man with a lantern standing near the steps when the passengers were alighting. I don't know whether or not it was the conductor or who it was. He had a lantern. All the employees have lanterns. I thought he was the conductor, but cannot swear to it."

This is a sufficient recital of the leading or material facts necessary to an understanding of the case.

At the close of the plaintiff's evidence the defendant moved to dismiss the action or for judgment as in case of nonsuit under the statute. The motion was allowed and the plaintiff excepted and appealed. The first question presented is whether there was any sufficient evidence of defendant's negligence which should have been submitted to the jury, for when a plaintiff's action is dismissed or he is nonsuited under the provisions of the statute, the truth of the evidence is thereby admitted, and the plaintiff is entitled to have it considered in the strongest and most favorable light for him, and to have the benefit of every reasonable inference or deduction that can be drawn therefrom for the purpose of sustaining his cause of action.

If the evidence tends to establish any state of facts entitling plaintiff to recover, no matter how the combination of those facts may be made, the plaintiff has a right to have the case submitted to the jury, for they might find just that state

of facts. This principle is so well settled that it does not now require the citation of any authority to support it. In some respects this case is like that of *Whitley v. Railroad,* 122 N. C., 987. It was there held that a person who goes upon the train of a railroad company for the purpose of accompanying and assisting one of its passengers is not a trespasser and is entitled to the protection of the company if the company's conductor in charge of the train had notice of his presence. The plaintiff's counsel in that case contended that such a person was a licensee and, under the circumstances, entitled to "the consideration, care and protection of the defendant," and the defendant's counsel, as the Court then understood his position, did not seem to deny this contention of the plaintiff's counsel, but insisted that he had no right to receive from the company that same degree of attention and protection that would be due to a passenger. The Court declined to discuss this contention of the defendant, but simply held that whatever his precise status was he was in any view entitled to protection and some degree of consideration for his safety. It is certainly not unlawful for one person to assist another to board a train for the purpose of taking passage thereon when the situation of the passenger and the circumstances make it necessary, and especially so when no such assistance as is required by the passenger is offered by any employee of the company. We need not decide whether it is the duty of carriers of passengers on railways by their servants to inform themselves of the presence of such persons on their trains and to provide rules and regulations for that purpose, for that question is not necessarily involved in this case. It is sufficient, at least, to fix the company with liability that the conductor of its train, or other person in charge of it, has actual notice of the fact that a person who is not a passenger has gone upon its train for the purpose of rendering assistance to one of its passengers. If a person could ever

MORROW *v.* RAILWAY CO.

be justified in giving such assistance, we think the plaintiff was in this case, assuming the truth of the evidence, as we must do, for Mrs. York had with her six children, all of them comparatively young, and was encumbered with several pieces of hand-baggage and with some packages. She needed assistance and the company did not furnish it. The plaintiff, therefore, was rightfully on the train. What, then, was the defendant's duty, if any, towards him? If its conductor had notice of his intention to go upon the train for the purpose of assisting Mrs. York, the plaintiff was entitled to reasonable time to render the necessary assistance to her and to leave the train in safety. It may be that railroad companies are authorized by law to provide by rules and regulations for such cases, but in the absence of any such provision the law does not prohibit a person from getting on a car as the plaintiff did on this occasion. The only question, then, for decision is, was there any sufficient evidence to show that the defendant did know that plaintiff had gone upon the train to assist Mrs. York. We think there was. Whether it is sufficient to satisfy the jury and induce them to find the fact is for them and not for us to decide. At the time the plaintiff and Mrs. York boarded the train an employee of the company was standing near by in full view of them, so that he could see what was done and hear what was said. He must have seen that Mrs. Carson had so conducted herself towards the other parties as to indicate that Mrs. York and her children were the passengers and that plaintiff and Carson were only assisting them. "Mrs. Carson bid Mrs. York and her children good-bye," but said nothing to the plaintiff and Carson. This may have been slight evidence when considered by itself, but it was at least some evidence, and when taken in connection with the other facts and circumstances testified to by the witnesses was sufficient for the consideration of the jury. Whether the person who stood near the steps of the

coach as the plaintiff entered it was the conductor or some other employee of the defendant charged in law or in fact with the duty of providing for plaintiff's safety while exercising the lawful right of assisting one of the company's passengers, is a proper subject of inquiry for the jury, who in passing upon it will be guided by the facts as they may find them from the evidence and the instructions of the Court upon the law. There being some evidence of notice to the company, if the jury should find from that evidence that the company did in fact have notice that plaintiff had gone upon the train to assist Mrs. York, we do not think that it could be successfully contended that there was no evidence that plaintiff did not have reasonably sufficient time to assist Mrs. York and then leave the train before it started. Indeed, it appears that without any delay, and certainly without any unnecessary delay, he and Carson assisted Mrs. York and the children to get upon the train, and that before they could find a vacant seat for them the train left the station. This fact as to whether the plaintiff had sufficient time to render the assistance and then to leave the train with safety was one for the jury to pass upon, but we are constrained to say that there was some evidence which tended to establish it.

But even if there was evidence of the defendant's negligence in this case, we do not think there was any error in the ruling of the Court below, because the plaintiff, upon his own showing, was guilty of contributory negligence, which was the proximate cause of his injury. When he found that the train was in motion and its speed steadily increasing he should have notified the conductor of his situation so that the train could be stopped, or he should have waited until it reached the next station before he attempted to get off. His failure to do so and his attempt to alight from the train, which was then running at the rate of three or four miles an hour, was such negligence on his part as defeats his right of recovery.

The plaintiff in this respect is certainly not entitled to any greater consideration than a passenger.

In the case of *Burgin v. Railroad,* 115 N. C., 673, *Shepherd, C. J.,* for the Court, says: "We think there can be no question as to the correctness of the ruling sustaining the demurrer. The general rule is that passengers who are injured while attempting to get on or off a moving train cannot recover for the injury. If the intestate, without any direction from the conductor, voluntarily incurred danger by jumping off the train while in motion, the plaintiff is not entitled to recover. In addition to the authorities cited by the Court, there are a great number to be found in other jurisdictions which abundantly sustain the proposition that it is contributory negligence to attempt to alight from a moving vehicle, although in consequence of the refusal of the carrier to stop the passenger will be taken beyond his destination, unless he is invited to alight by some employee of the carrier whose duty it is to see to the safe egress of the passengers from the conveyance. The mere fact that the train fails to stop, as was its duty, or as the conductor promised to do, does not justify a passenger in leaping off, unless invited to do so by the carrier's agent, and the attempt was not obviously dangerous."

In *Johnson v. Railroad,* 130 N. C., 488, *Clark, J.,* speaking for the Court and approving the charge of the Court below, says: "The general rule is that a person who gets off a train while it is in motion is guilty of contributory negligence. It is the duty of the passenger when he sees the train in motion to ask for it to be stopped, and if it is not done he ought not to get off. To this general rule there are some exceptions, one of which is that if a passenger is commanded or invited by the conductor to get off while the train is in motion, and the train is going so slow that the danger of stopping or jumping off is not apparent to a reasonable man and he does so and is injured, it would not be contributory negligence."

The Court, in *Johnson v. Railroad,* held that the evidence did not show conclusively that the plaintiff was guilty of contributory negligence so as to bring the case within the principle announced in *Neal v. Railroad,* 126 N. C., 634, 49 L. R. A., 684, as there was some evidence from which the jury might infer that the plaintiff had been led by the action of the conductor to believe that it would be safe for him to alight from the train, and if the jury so found, the case would come within the exception to the rule that it is negligence to alight from a moving train.

The principle of the cases cited is affirmed in *Hinshaw v. Railroad,* 118 N. C., 1047. Indeed, all of the cases are based upon what was said by this Court in *Lambeth v. Railroad,* 66 N. C., 494, 8 Am. Rep., 508, which has been conceded for many years to be a leading and controlling authority upon this question. See also *Denny v. Railroad,* 132 N. C., 340, and *Gordon v. Railroad,* 132 N. C., 565.

Hutchinson, in his work on Carriers, section 641, states the doctrine to be that when a person attempts to get upon a railway train while in motion without the necessity for doing so induced by the conduct of the employees of the railroad company, and without an invitation to do so by its agent acting in the line of his duty, is guilty of negligence *per se* and precluded from the right to recover from the injury which may be thereby occasioned, and even if the company had adopted the practice of receiving its passengers on its trains while in motion, it would be reckless conduct on the part of the company, or of those in charge of its trains, which, though, would not justify or excuse the equally reckless imprudence of the injured party.

We cannot see how the case of a passenger boarding a train while in motion can be distinguished in principle from the case of a passenger or other person lawfully on the train alighting from the train while it is moving. If the one is

negligent to the extent of barring his right of recovery the other must necessarily be negligent to the same extent. *Burgin v. Railroad, supra.*

In this case the plaintiff attempted to alight from a moving train and was in the very act of alighting, when there was a sudden jerk of the train, which might have been expected under the circumstances, and he was thrown under the cars and injured. The train at the time was running with increasing speed, and the act of alighting from it at such a time was little, if anything, short of recklessness. It is unfortunate, indeed, that the plaintiff was thus injured, but it was due at least to his own misfortune and not to any fault which can be imputed to the defendant as a direct cause of it. The plaintiff's act, according to his own version of the facts, was the proximate cause of the injury. This seems to us to be well settled as the law of such a case. By his evidence the plaintiff shows affirmatively and beyond any dispute or controversy, if his evidence is to be taken as true, and it must be so regarded upon a demurrer to it, that his own negligence was, in law, the cause of the injury he sustained, and the rule laid down in *Neal v. Railroad, supra,* and *Bessent v. Railroad,* 132 N. C., 974, applies.

Although our decision that the plaintiff's own negligence was the proximate cause of the injury is in itself sufficient to sustain the ruling of the Court below, we have discussed the question of the defendant's negligence, as that of the plaintiff's negligence could not have arisen unless there was negligence on the part of the defendant. It was necessary, therefore, to determine first whether the defendant had been negligent in causing the injury to the plaintiff. *Gordon v. Railroad, supra.*

The ruling of the Court below upon the motion to dismiss was right.

No Error.