CASE 107.—ACTION BY FANNY WILSON AGAINST THE
    LOUISVILLE & NASHVILLE RAILROAD CO, FOR
    DAMAGES FOR PERSONAL INJURIES.—March 6.

# Louisville & N. R. R. Co. v. Wilson

Appeal from Barren Circuit Court.

SAMUEL E. JONES, Circuit Judge.

Judgment for plaintiff.     Defendant appeals.     Reversed.

1.  Carriers—Personal Injuries—Persons Accompanying Passengers—Notice of Character.—Where a plaintiff accompanying
    two small children purchased a half-fare ticket and the agent
    asked if it was for a particular child, the other being evidently
    too young to pay fare, and she answered that it was, that
    she was sending the children to their mother, these facts,
    with the further fact that no ticket was bought for herself,
    were not sufficient to charge the ticket agent with notice that
    she was going aboard only to assist the children.
2.  Same.—Where a train stopped its usual length of time at a
    station, during which plaintiff, with baggage in her hand and
    without explaining her purpose, got on the train to assist her
    grandchildren, who were with her and were to be passengers,
    there was no notice to the trainmen that she did not intend
    to remain on the train.
3.  Same—Contributory Negligence.—Where plaintiff boarded a
    train to assist a passenger, her jumping off after the train
    started was contributory negligence precluding recovery for
    injury.

BENJAMIN D. WARFIELD and SIMS, DUBOSE & RODES for
appellant.

J. LEWIS WILLIAMS for appellee.

(No briefs—record out of office.)

Louisville & N. R. R. Co. v. Wilson.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing..

This is an appeal from a judgment of the lower court entered upon a verdict awarding appellee $300 damages for injuries sustained in alighting from appellant's passenger train. The recovery was had upon the ground that appellant's agents in charge of the train were guilty of negligence in starting it without notice to appellee, and without reasonable time or opportunity for her to get off the train before it got in motion. The answer contained a traverse and pleaded contributory negligence on the part of appellee; the latter plea was denied by reply. The accident occurred at Cave City, where appellee had gone with her two grandchildren to put them aboard appellant's train that they might be carried to their mother in Louisville. According to appellee's own testimony, when she got to the depot with her grandchildren, she bought of appellant's ticket agent, Curd, a half-fare ticket for one of them, but got no ticket for the other, as, under appellant's rules, it was entitled to free transportation. When the train arrived and stopped at Cave City, appellant took the children into the apartment of the coach reserved for colored passengers, where they belonged, but, finding the seats taken therein, she led the children into the smoker's section of the coach, and, upon reaching the first vacant seat, discovered that the train was in motion, whereupon she at once deposited their baggage, consisting of two baskets and a parcel, and leaving the children, hastened to the platform of the coach, from a step of which, though the train was still in motion, she jumped to the depot platform, thereby breaking the bones of one of her ankles.

It is not apparent from the evidence that the children were incapable of entering the coach and finding seats without assistance, for they had frequently traveled from Louisville to their grandmother's and back to Louisville, but the evidence did conduce to prove that they were unable to carry into the car the large quantity of baggage accompanying them. We may, therefore, assume that it was necessary for appellee, or some one, to assist them upon the train with it, and that she had the right to enter the coach for that purpose, but that fact was not, of itself, sufficient to make appellant responsible for her injuries. We find the law thus announced in Moore on Carriers, p. 584: "There is no obligation upon the carrier to hold its train until every person not a passenger leaves the same, irrespective of the time of the stop made at the station. It is the duty of one who has assisted a passenger on board, if the train starts before he has had time to get off, to remain until he can make known his wish to get off, and, if he alight while the train is in motion, he does so at his own risk, and cannot maintain an action against the carrier for injuries received, unless he shows that he exercised due care and the carrier was negligent. It is not negligence for the carrier to start its train before such person has had time to get off, unless its servants had notice of his intention to do so." Texas Pac. R. Co. v. McGilvany (Tex. Civ. App.), 29 S. W. 67; Dillingham v. Pierce (Tex. Civ. App.), 31 S. W. 203; McLarin v. Atlantic, etc., R., 85 Ga. 504, 11 S. E. 840; Central R. R. v. Letcher, 69 Ala., 106, 44 Am. Rep. 505; Yarnell v. Kansas City R. Co., 113 Mo. 570, 21 S .W. 1, 18 L. R. A. 599; Coleman v. Georgia R. & B. Co., 10 S. E. 498; Keokuk Packet Co. v. Henry, 50 Ill., 264. In Little Rock & Fort Smith R. Co. v. Lawton (Ark.), 18 S. W. 543, 15 L. R. A. 434, 29 Am.

St. Rep., 48, the facts were very similar to those of the case at bar.  Lawton had taken the hand baggage of a lady and child into the car, and in alighting after the train started was injured.  His main contention was that the train did not stop a reasonable length of time to permit him to alight.  The trial court instructed the jury that it was the duty of those in charge of the train to hold it the full length of time that was usually required for passengers to get on or off the cars at that place.  In passing on this contention the Supreme court of Arkansas in part said: "But one who goes upon the train to render necessary assitance to a passenger in conformity to a practice approved, or acquiesced in, by the carrier, in its interest and upon its implied invitation as before stated, has a right to render the needful assistance and leave the car, and the railroad company, in permitting him to enter it with knowledge of his purpose, is presumed to agree that he may execute it, and is bound to hold the train a reasonable time therefor.  Griswold v. Chicago & N. W. R. Co., 64 Wis. 652, 26 N. W. 101.  But the duty is dependent upon the knowledge of his purpose by those in charge of the train, for without such knowledge they may reasonably conclude that he entered to become a passenger, and cause the train to be moved after allowing him a reasonable time to get aboard.  The law could not, in reason or justice, impose as a duty the doing of that which, in the light of everything known to trainmen, would not appear necessary or proper, or hold that the cars should be stopped when there was no reason to stop them except a fact unknown to them.  *  *  *"  The doctrine announced in the cases supra was approved by this court in Berry v. L. & N. R. R. Co., 60 S. W. 699, 22 Ky. Law Rep. 1410.  Berry, having gone into a passenger car to bid his family goodbye on their departure for

Florida, attempted to alight from the train while it was in motion and was thrown under it and injured, for which he sought to recover damages of the railroad company. This court, after reviewing the authorities, supra, and others cited in the case, in part said: "From these and numerous decisions bearing upon this question, we think it is clear that, if appellee had either actual or constructive notice that appellant had gone into the car for the purpose of seating his wife and children, and that he intended to get off before the train started, it was their duty to have given him notice before starting the train, and to have held it long enough for him to get off with safety, but, in the absence of such notice, no obligation existed upon their part. * * *" In the more recent case of Bishop v. I. C. R. R. Co., 77 S. W. 1099, 25 Ky. Law Rep. 1363, the court, following L. & N. R. R. Co. v. Crunk, 119 Ind. 549, 21 N. E. 31, 12 Am. St. Rep. 443, held that the question of the railroad company's liability should have been left to the jury, as the evidence conduced to prove that Bishop had entered the car to asisst an invalid woman by direction of the conductor of the train, who, under such circumstances, should have held the train a reasonable time for him to get off, or in any event have given him notice when it was about to start.

It is appellee's contention that appellant did have notice of her entering the car and the purpose for which she did so, and that, with such knowledge, its servants in charge of the train started it without notice to her, and also without stopping it the customary or reasonable time. The alleged notice of her purpose in entering the car, she claimed, was given to Curd, the ticket agent, when she bought the half ticket for the older of the two children. She testified that the children were then with her, and were known

to, and seen by, Curd, who asked her if she wanted the ticket for the boy, and that she answered in the affirmative and told him she was going to send them to their mother in Louisville, and these facts, with the further fact that she did not get a ticket for her own use, it is insisted, was notice to him, and through him to the appellant, that the children would have to be assisted on the train and that she was not going to Louisville with them. It was not stated by appellee, or claimed by her counsel, that she told the ticket agent she was not going to Louisville with the children, and the purchase of a ticket by her was not a condition precedent to her right to enter the train as a passenger for Louisville, but, assuming that her failure to get for herself a ticket gave, or ought to have given, the agent information that she would not accompany her grandchildren to Louisville, it was not notice to him that they would not be placed by her in charge of some one then in Cave City, or whom she expected to be on the train when it arrived. Nor do these alleged facts create the presumption that the ticket agent knew, or ought to have known, that it would be necessary for the children to be assisted into the car. As it was not claimed by appellee that the ticket agent saw or was told what quantity of baggage they had. what reason had he for knowing that they were encumbered with baggage which they could not carry into the car? In view of the manifold duties required of a ticket agent, and in the absence of a direct request from appellee that he inform the conductor that she would have to be allowed to assist her grandchildren on the train and given time to do so, it cannot fairly be claimed that he was charged with such duty, or knew that it was expected of him.

The evidence failed to show that the conductor or brakeman were neglectful of their duties. The former,

after seeing the passengers who were to get off at
Cave City leave the train, went to the front end of the
train to assist in removing a corpse from the baggage
car.  One of the brakeman assisted, as was customary
and proper; in securing water from the tank for the
locomotive, the other was in his place on the station
platform, somewhere between the smoker and ladies'
coach, assisting passengers entering or leaving the
cars.  Evidertly this brakeman was the one seen by
appellee when she boarded the train with her grand-
children.  Both the conductor and brakeman denied
that they saw appellee get on the train, or knew she
was on it or that they had notice of her purpose to
leave the car.  From their testimony, as well as that
of practically nearly all the witnesses, it appears that,
on the occasion in question, the train remained at Cave
City the usual stopping time, which was about four
minutes, and that, just before the train started, the
conductor called out the usual warning, "All aboard."
Manifestly, the stop was long enough to let the usual
number of passengers on and off the train, allow
time for taking the corpse from the baggage car, and
to supply the locomotive with water.  There could
not, therefore, have been any undue haste in starting
the train.  According to the evidence appellee knew
that it was customary for this train to stop at Cave
City from two to four minutes, and that, when it took
water there, which it rarely missed doing, the full
time allowed for the stop was usually con-
sumed.  With this knowledge, she ought to
have timed her going upon, and getting off,
the train accordingly, or, of she had reason to
believe that the train would not stop long enough to
enable her to assist the children into a car, find them
a seat, and deposit their baggage, she should have
notified the conductor or a brakeman of the purpose

for which she was about to enter the car, or have
requested him or them to take the baggage into the
car and assist the children to a seat therein. She
admitted that neither of these things was done by
her, although there was, as she testified, a
brakeman of the train standing near when she
got on the coach. This being true, it is but
reasonable to presume that the brakeman sup-
posed she was entering the coach as a passenger, and,
as she was carrying the baggage for the children and
had them in charge, there was nothing in the appear-
ance or situation of the parties that required addi-
tional assistance from him, or that gave him informa-
tion that appellee was not entering the car as a
passenger. In brief, the facts supplied by the
evidence were not sufficient to constitute actual or
constructive notice to the ticket agent or trainmen
that appellee was not a passenger, or that it was her
purpose to leave the car after assisting the children
to a seat and depositing their baggage. Therefore,
no negligence on the part of appellant's ticket agent
or trainmen was shown by the evidence, and, appel-
lee's injuries having resulted solely from her own
negligence, the jury should have been peremptorily
instructed to find for appellant.

It is not claimed that appellant's servants in charge
of the train knew, or by the exercise of ordinary care
could have known, of appellee's purpose to jump
therefrom, in time to stop the train, and thereby pre-
vent her injuries.

It follows from what has been said that the instruc-
tions given by the court were altogether erroneous.

Judgment reversed, and cause remanded for a new
trial and further proceedings consistent with the
opinion.

JUDGE NUNN dissents.