## CHICAGO, R. I. & P. RY. CO. v. McALESTER.

No. 2870. Opinion Filed August 6, 1913.

(134 Pac. 661.)

1. **CARRIERS—Injury to Licensees—Assisting Passengers.** Where a person, with the knowledge and consent of the servant of a common carrier, has entered its train for the purpose of assisting a passenger, the carrier is under obligation to permit him, in the exercise of due diligence, to accomplish his purpose and alight from the train before it is set in motion.

2. **SAME—Proximate Cause.** Where plaintiff, not a passenger, with the assurance of defendant's conductor that he will have time to do so, in the nighttime, without having had much experience in getting on and off trains, goes onto its train in the act and for the purpose of assisting his wife and four small children, all passengers, with a hand grip, to a seat thereon; where the train is not held a minute, nor near as long as usual, but starts before he has time to accomplish said purpose; where, when he has found a seat for such passengers, he, without taking time to say good-bye, hurriedly goes to the vestibule door at which he entered for the purpose of alighting, but is prevented by the act of defendant's brakeman in closing the door at the time he approaches it; where he then asks the brakeman if the train is "going," and, upon being informed it is, asks that it be stopped to permit him to alight; where the brakeman thereupon, without heeding his request, directs him to go to the next vestibule door and get off; where, in accord with such direction, he alights about 200 yards from the station from which the train started; where he sustains bodily injuries in so alighting; where there are no lights in the darkness outside the train; and where he has exercised due diligence in point of time in accomplishing his purpose on the train and in alighting therefrom—it cannot be said as a matter of law that the negligence of defendant was not the proximate cause of his injuries.

3. **APPEAL AND ERROR—Verdict—Conclusiveness.** Under section 6, article 23 (section 355, Williams' Ann. Ed.), Constitution, the verdict of the jury for plaintiff, where the facts are as stated in the second paragraph of the syllabus, is conclusive as against the defense of contributory negligence.

4.    **TRIAL—Instructions—Repetition.**  It is not error to refuse requested instructions substantially embodied in others given the jury by the court.

(Syllabus by Thacker, C.)

*Error from District Court, Stephens County;*
*Frank M. Bailey, Judge.*

Action by J. A. McAlester against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*C. O. Blake, H. B. Low, R. J. Roberts, W. H. Moore,* and *Wilkinson, Morris & Speer,* for plaintiff in error.

*Womack & Brown,* for defendant in error.

Opinion by THACKER, C.  In this opinion plaintiff in error will be designated as defendant, and defendant in error as plaintiff, in accord with their respective titles in the trial court.

Assuming the facts to be such as the evidence, together with the inferences reasonably deducible therefrom, tends to establish in favor of the verdict, it appears:  At about 2 o'clock at night, on August 20, 1909, at Marlow, Okla., plaintiff, after purchasing transportation ticket to Bridgeport, Tex., for his wife and four small children, the oldest six years of age and the other three so young as to require carrying in arms, informed defendant's conductor that he was not going away on the train, and asked if he would have time to go onto same with his wife and children, who apparently needed his assistance, and to alight therefrom; and, upon being informed by the conductor that he would, entered the train, carrying two of the children in his arms, while his wife carried another one and a hand grip; but the train, having stopped not to exceed a minute at this station, which was much less than its usual time of stopping there, started as soon as plaintiff and family had gotten into the first coach, where they found no vacant seat, and through which they at once passed to the next coach to the rear, whereupon, finding a seat vacant, plaintiff, without taking time to say good-bye, left his wife and children and hurriedly made his exit from the train, in doing

which he, finding the doors in the vestibule between the two mentioned coaches closed, passed through said first coach to the car door at the vestibule at which he had entered the train, where he found defendant's brakeman, who had just closed the vestibule door in time to prevent his exit there. Plaintiff thereupon asked this brakeman if the train was going, and, upon being told that it was, informed the brakeman that he wanted to get off, and asked that the train be stopped to permit him to do so; but the brakeman directed him to go to the vestibule door at the opposite end of the next car forward and get off. Passing through this car the plaintiff found the vestibule door to which he had been directed open, and, relying upon the direction of the brakeman, got off as directed, about 200 yards from the station, but in thus alighting he fell and sustained injuries, including a fracture of the radius, a dislocation and, perhaps, a fracture of the patella, laceration of hand, and injuries resulting in swollen condition of hands, head, and hips, from which, surgically speaking, he afterwards and before the trial recovered; but he was confined to his bed a month, incurred expense of $70 for a doctor, was unable to work during the "fall" following, and at the time of the trial had a weakened leg and hand, as a result of which his laboring and earning capacities were reduced by one-half. His earning capacity was $1 per day before he suffered these injuries. The night was dark and there was no light outside the train. Plaintiff had resided at Marlow five years, and had been at defendant's station and seen the train stop there "right smart"; but he testified he lived two miles northeast of Marlow, had come in to the station by means of a wagon and team, was a farmer, and, although 35 years old, in all his life had not been on a train more than two or three times, one of which times it appears included his removal trip from Missouri to Parker county, Tex.

In *St. Louis & S. F. R. Co. v. Lee,* 37 Okla. 545, 132 Pac. 1072, it is held:

"One who goes upon a train to render assistance to a passenger, in conformity with a practice approved or acquiesced in by the carrier, has the right to render the needed assistance and

leave the train; and the carrier, in permitting him to enter with knowledge of his purpose, is presumed to agree that he may execute it, and is bound to hold the train a reasonable time therefor. If he is injured by reason of the sudden starting of the train or the omission to give the customary signals, the carrier will be liable."

In notes to *City of Seattle (Pacific Coast Company et al. v. Jenkins)*, 10 Ann. Cas. 159, it is said:

"If the servants of the carrier know that a person is boarding a train for the purpose of assisting a passenger, and not with the intention of becoming a passenger himself, they are under obligation to hold the train a reasonable or sufficient time to permit him, in the exercise of due diligence, to accomplish his purpose and to alight from the train before it is set in motion."

*Southern R. Co. v. Patterson*, 148 Ala. 77, 41 South. 964, 121 Am. St. Rep. 30; *Little Rock, etc., Railroad Company v. Lawton*, 55 Ark. 428, 18 S. W. 543, 15 L. R. A. 434, 29 Am. St. Rep. 48; *Seaboard Air-Line R. Co. v. Bradley*, 125 Ga. 193, 54 S. E. 69, 114 Am. St. Rep. 196; *Louisville, etc., R. Co. v. Crunk*, 119 Ind. 542, 21 N. E. 31, 12 Am. St. Rep. 443; *Bishop v. Illinois Cent. R. Co.* (Ky. 1904) 77 S. W. 1099; *Louisville, etc., R. Co. v. Wilson* (1907) 124 Ky. 846, 100 S. W. 290, 8 L. R. A. (N. S.) 1020; *Doss v. Missouri, etc., R. Co.*, 59 Mo. 27, 21 Am. St. Rep. 371; *Bond v. Chicago, etc., R. Co.*, 122 Mo. App. 207, 99 S. W. 30; *Morrow v. Atlanta, etc., Air-Line R. Co.*, 134 N. C. 92, 46 S. E. 12; *Johnson v. Southern R. Co.*, 53 S. C. 303, 31 S. E. 212, 69 Am. St. Rep. 849; *Cooper v. Atlantic Coast Line R. Co.* (1907) 78 S. C. 562, 59 S. E. 704; *International, etc., R. Co. v. Satterwhite*, 19 Tex. Civ. App. 170, 47 S. W. 41; *Texas, etc., R. Co. v. Funderburk*, 30 Tex. Civ. App. 22, 68 S. W. 1006; *St. Louis Southwestern R. Co. v. Cunningham* (1907) 48 Tex. Civ. App. 1, 106 S. W. 407.

In notes to *Wickert v. Wisconsin Ry. Co.*, 20 Ann. Cas. 452-456, will be found more recent cases, to the same effect, upon the question of the duties of a railroad company to a person attending a passenger boarding a train.

In *C., R. I. & P. Co. v. Duran*, 38 Okla. 719, 134 Pac. 876, it is said:

"In *Hughes v. C., R. I. & P. Ry. Co.*, 35 Okla. 482, 130 Pac. 592, it is said: 'In *Chicago, R. I. & P. Ry. Co. v. Beatty*, 27 Okla. 844, 116 Pac. 171, it is said: "The correct rule seems to be that a person guilty of negligence or an omission of duty should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact exist, whether they could have been ascertained by reasonable diligence or not, would have thought at the time of the negligent act as reasonably possible to follow, if they had been suggested to his mind."' Shearman & Redfield on Negligence (4th Ed.) sec. 29."

A number of cases are there cited as sustaining the foregoing formula for determining whether the injury is the proximate result of the negligence, and it appears that the verdict and judgment in the present case are based upon facts which should enable them to withstand the test of this formula.

In *Kansas City Southern Ry. Co. v. Worthington*, 101 Ark. 128, 141 S. W. 1173, where a passenger got off of a moving train after he discovered it would not stop at the station of his destination, it was said:

"If, as a matter of law, he was not guilty of contributory negligence in leaving the moving train under the circumstances of this case, then the injury which he sustained was due to the sole negligence of the defendant in failing to stop its train, which was the proximate cause thereof. The immediate efficient cause of the plaintiff attempting to leave the train was the omission of the defendant to stop its train and its act in passing the station; this created a situation that necessitated immediate action on plaintiff's part. The act of plaintiff in alighting from the train was only an incidental cause contributing to the injury, which was induced by the defendant's negligent failure to stop its train. If in thus acting the plaintiff was negligent, he would then, and only then, be precluded from a recovery because of his contributory negligence. *L. R. & Ft. S. Ry. Co. v. Atkins*, 46 Ark. 423; 3 Hutchinson on Carriers (3d Ed.) sec. 1430."

Also, see cases cited in foregoing and following notes from Ann. Cas., and *Galloway v. Chicago, etc., R. Co.*, 87 Iowa, 458, 54 N. W. 447; *Evansville, etc., R. Co. v. Athon*, 6 Ind. App. 295, 33 N. E. 469, 51 Am. Rep. 303; *Texas Central R. Co. v. Hutchinson* (Tex. Civ. App.) 132 S. W. 509.

In Hutchinson on Carriers (3d Ed.) sec. 1430, *supra,* it is said:

"The injury will be referred to the nearest and immediate agency only when it is independent of the original act or conduct of the defendant. If the intervening causes are only incidental, having been set in motion by the first cause, and are not new and independent forces sufficient of themselves to cause the disaster, the law passes these, and traces the injury to the wrongful act which puts them in operation."

In 6 Cyc. 648, it is said:

"In many railroad cases it has been said that an attempt to alight from a moving train is negligence *per se.* But there are other cases to the contrary, and in general the question of negligence in such cases is left to be determined as one of fact."

Section 6, art. 23 (section 355, Williams' Ann. Ed.) Constitution of Oklahoma reads:

"The defense of contributory negligence or assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury."

See the following cases: *Chicago, R. I. & P. Ry. Co. v. Beatty,* 27 Okla. 844, 116 Pac. 171; *Independent Cotton Oil Co. v. Beacham,* 31 Okla. 384, 120 Pac. 969; *Phoenix Printing Co. v. Durham,* 32 Okla. 575, 122 Pac. 708, 38 L. R. A. (N. S.) 1191; *Chicago, R. I. & P. Ry. Co. v. Hill,* 36 Okla. 540, 129 Pac. 13; *Dewey Portland Cement Co. v. Blunt,* 38 Okla. 182, 132 Pac. 659; *St. Louis & S. F. R. Co. v. Long, post; C., R. I. & P. Ry. Co. v. Duran, supra.* It thus appears that the question of contributory negligence has been eliminated from the case by the verdict of the jury.

Aside from the effect of the provision of our Constitution quoted, *supra,* it appears that the question as to whether plaintiff was guilty of contributory negligence in alighting from the train was one for the determination of the jury; and in the notes to *City of Seattle, supra,* upon this point, it is said:

"It has been held that it is negligence *per se* for a person, who has gone upon a train to assist a passenger, to attempt to alight from the train while it is moving at the rate of three or four miles an hour. *Morrow v. Atlanta Air Line R. Co.,* 134 N. C. 92, 46 S. E. 12. But ordinarily the question whether a person who boarded a train for the purpose of aiding a pas-

senger was guilty of contributory negligence in attempting to alight therefrom while the train was moving is one for the determination of the jury. *Southern R. Co. v. Patterson,* 148 Ala. 77, 41 South. 964 [121 Am. St. Rep. 30]; *Suber v. Georgia, etc., R. Co.,* 96 Ga. 42, 23 S. E. 387; *Louisville, etc., R. Co. v. Crunk,* 119 Ind. 542, 21 N. E. 31 [12 Am. St. Rep. 443]; *Bishop v. Illinois Cent. R. Co.* (Ky. 1904) 77 S. W. 1099; *Doss v. Missouri, etc., R. Co.,* 59 Mo. 27 [21 Am. Rep. 371]; *Bond v. Chicago, etc., R. Co.,* 122 Mo. App. 207, 99 S. W. 30; *Cooper v. Atlantic Coast Line R. Co.* (1907) [78 S. C. 562], 59 S. E. 704; *International, etc., R. Co. v. Satterwhite,* 15 Tex. Civ. App. 102, 38 S. W. 401; *Texas, etc., R. Co. v. Funderburk,* 30 Tex. Civ. App. 22, 68 S. W. 1006; *Texas, etc., R. Co. v. McGilvary* (Tex. Civ. App. 1894) 29 S. W. 67."

In *Southern Ry. Co. v. Patterson,* 148 Ala. 77, 41 South. 964, 121 Am. St. Rep. 30, where the plaintiff was injured in alighting from a moving train after having assisted an old lady onto the same, under circumstances which the court thought sufficient to afford reasonable inference that the conductor knew that he boarded the train solely for that purpose, it was said:

"It is undoubtedly the law that 'a carrier owes a duty to persons who come upon a train accompanying passengers, with the intention of getting off before the train starts, or for the purpose of meeting passengers who are about to alight. And especially is there such a duty when the passenger requires assistance which the servants of the carrier do not undertake to render. But if the servants of the carrier have no notice or knowledge of the intention of one thus coming on board to get off before the starting of the train, they owe him no additional duty as to affording him an opportunity to safely alight.' 6 Cyc. p. 615. But where the conductor of the train knows, or should have known, that the only purpose of the person assisting a passenger, needing assistance to board the train, is to assist the passenger to a seat, he is bound to give such person a reasonable opportunity to alight before starting it. And if, after the train is started, the person alights from it and is injured, and his act of alighting is not under such circumstances as to make him guilty of contributory negligence, he is unquestionably entitled to recover the damages suffered by him. *L. & N. R. Co. v. Crunk,* 119 Ind. 542, 21 N. E. 31, 12 Am. St. Rep. 443; *Galloway v. C. R. I. & P. Ry. Co.,* 87 Iowa, 458, 54 N. W. 447; *Evansville & T. H. R. Co. v. Athon* [6 Ind. App. 295], 33 N. E. 469, 51 Am. St. Rep. 303; Wood on Railroads, sec. 305, p. 1297, and note 2; 2 Redfield on the Law of

Railways, p. 280; 4 Elliott on Railroads, sec. 1578 (a); * * * note 29 Amer. St. Rep. page 54. Mr. Elliott in his work cited above says: "There is some diversity of opinion as to whether one who enters a train for the purpose of assisting a passenger is to be regarded as a passenger, and there are cases which seem to hold that such a person is a passenger. We are unable to assent to this doctrine as broadly held by some of the cases, for it seems to us that the extraordinary duty of a carrier to a passenger is not, as a general rule, owing to such a person, although we have no doubt that the railroad company owes to him the duty of exercising ordinary or measurable care. There may probably be cases where a person assists a passenger on a train, as, for instance, where the passenger is ill, feeble, too young to care for himself, or the like, where it is proper to hold that the person rendering the assistance is a passenger, but where there is no reason for rendering assistance the person giving it cannot, as we believe, be regarded as a passenger.' * * * Nor can it be affirmed, as a matter of law, that plaintiff's alighting from the train, while moving, under the circumstances shown, was an act of negligence which would defeat his recovery. Whether it was or not was a question for the jury. *Central Rail & Banking Co. v. Miles,* 88 Ala. 256, 6 South. 696; *North Birmingham St. Ry. v. Calderwood,* 89 Ala. 247, 7 South. 360, 18 Am. St. Rep. 105; *Montgomery & Eufaula R. Co. v. Stewart,* 91 Ala. 421, 424, 8 South. 708; *Watkins v. Birmingham Ry. & Elec. Co.,* 120 Ala. 147, 152, 24 South. 392, 43 L. R. A. 297, and authorities there cited. There was clearly no duty on plaintiff to request the conductor to stop the train, after it started, for him to alight. Miles' case, *supra.* He had the right to get off, and, if injured in doing so, he may recover if the conductor knew or ought to have known what his purpose was in boarding it, there being no dispute but that he was diligent in the service he was rendering, and in getting off he did no more than a prudent and careful man would have done. And the breach of duty owing to him by the conductor in starting the train without giving him a reasonable opportunity to alight was clearly the proximate cause of his injury, just as much so as was the breach of duty the proximate cause of the injury recovered for in the case of *Central R. & Banking Co. v. Miles,* and other cases cited by us of a similar nature."

We think the distinction here pointed out by the learned author is well taken.

In the present case plaintiff, after going upon the train with the knowledge and consent of defendant, was confronted by a

sudden emergency, resulting immediately and directly from defendant's breach of duty; and the alternative of alighting from the moving train or being carried away thereby was thus presented to him. The court cannot say under the facts of his situation at the time, as a matter of law, that an error in judgment by plaintiff in his decision to alight instead of being carried away was an independent intervening cause severing the causal connection between defendant's negligence and plaintiff's injuries. To the contrary, it appears that the decision and action of plaintiff in alighting was a mere incident of defendant's negligence, and an emergency thereby created. There was no time for calm deliberation. Quick decision and action were required of him, in order to prevent being carried away or encountering greater danger from higher speed when alighting. The evidence shows that he had ridden on a train but a few times; and it is not strange that he should have been unable to correctly estimate the speed of the train or determine the danger to himself when he alighted, in view of the darkness outside the train, the emergent situation in which he was, and the direction he received from the brakeman to go to the next door and get off, which clearly implied an expression of opinion by the brakeman, who presumably had superior knowledge, that he might safely do so. It is true that there is a measure of danger in alighting from a moving train, no matter how slow it may be moving, and that such danger increases with the increased rate of speed of the train; but it is also a matter of common knowledge that serious injury does not necessarily result from alighting from a train moving at 25 miles per hour, the highest rate of speed any one testified the train was going at the time plaintiff alighted therefrom; and, assuming plaintiff got off within about 200 yards of the station, as he testified, the testimony of defendant's conductor, estimating the speed of the train at 25 miles per hour, must be far in excess of the actual speed of the train at the time.

There appears to be no reversible error in the instructions of which defendant complains; and, at least in so far as correct

and appropriate, those requested by defendant and refused by the court appear to be substantially embodied in the instructions given by the court.

We are therefore of opinion that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.