## E. G. FIKE & CO. v. ADAMS et al.

No. 20613. Opinion Filed July 6, 1932.

E. F. Cadwell and G. A. Paul, for plaintiff in error.

Phil W. Davis, Jr., L. O. Todd, and Allen, Underwood & Canterbury, for defendants in error..

F. B. Dillard, amicus curiae.

KORNEGAY, J. This is a proceeding in error to review a judgment of the district court of Tulsa county, rendered on the 7th day of February, 1929, in favor of the defendant in error Adams, and against the plaintiff in error, for the recovery of damages in the sum of $800, by reason, as alleged, of water flooding the plaintiff's land through a sewer that had been constructed by the plaintiff in error for the town of Red Fork.

There are two companion cases to this case, which is numbered in the court below as 39227, the petitions differing probably in name only and description of the land that was flooded. E. G. Fike & Co. v. Schmitt, 158 Okla. 165, 13 P. (2d) 88, E. G. Fike & Co. v. Latimer, 158 Okla. 165, 13 P. (2d) 89. The petition on which this case was tried is in two counts, one being for damages for the flooding, and the other being based on the idea of the sewer itself being a nuisance. On the first cause of action $3,000 damage was asked, both of the town of Red Fork. a municipal corporation, and the town of Garden City, an

other municipal corporation, and the present plaintiff in error, E. G. Fike & Company. The petition is as follows:

"In the District Court in and for Tulsa County, State of Oklahoma.

"Hiram Adams, Plaintiff, v. Town of Red Fork, a Municipal Corporation, Town of Garden City, a Municipal Corporation, and E. G. Fike & Company, a Corporation, Defendants.

"Lien Claimed.

"No. 39227.

"Petition.

"Plaintiff, Hiram Adams, for his cause of action against the defendants, town of Red Fork, a municipal corporation, town of Garden City, a municipal corporation, and E. G. Fike & Company, a corporation, alleges:

"1. The defendant town of Red Fork is a municipal corporation, organized and existing under the laws of the state of Oklahoma, the defendant town of Garden City is a municipal corporation organized and existing under and by virtue of the laws of the state of Oklahoma, the defendant E. G. Fike & Company is a corporation.

"2. Plaintiff is and at all times hereinafter mentioned was the owner and in possession of the following described property, to wit:

"The southwest ten (10) acres of lot two (2), section twenty-five (25) township nineteen (19) north, range twelve (12) east, in Tulsa county, Okla., and was the tenant and in possession of the following described property, to wit:

"The northwest ten (10) acres of lot two (2), section twenty-five, township nineteen (19) north, range twelve (12) east in Tulsa county, Okla.

"3. The defendants town of Red Fork and E. G. Fike & Company, prior to the 13th day of April, 1927, constructed and laid from said town of Red Fork in Tulsa county, Okla., to the Arkansas river in said county, a conduit of iron, tile or other material for the purpose of conducting and discharging sewage from said town of Red Fork to said Arkansas river, and dug various lateral ditches in said town of Red Fork so that the same connected with and drained into said conduit.

"4. Part of said conduit was laid over and upon a certain street in said town of Garden City known and designated as Russell avenue, was so laid and constructed by said defendants town of Red Fork and E. G. Fike & Company, prior to the 13th day of April, 1927, and was after said construction and laying, and ever since has been maintained by said town of Red Fork and said E. G. Fike & Company. Said construction, laying and maintenance was and has been at all times well known to said town of Garden City, and the nature and character and manner of said construction had been, at all times while the same was in process, and subsequently were, known to said town of Garden City. The laying, construction and maintenance of said conduit upon said Russell avenue was permitted, acquiesced in and authorized by said town of Garden City.

"5. That part of said conduit upon said Russell avenue as constructed and maintained by said town of Red Fork and said E. G. Fike & Company, contained divers openings out of which water was capable of escaping and flooding said Russell avenue and the lands adjacent thereto.

"6. On or about the 13th day of April, 1927, and subsequently thereto large volumes of water escaped from said conduit through said openings and overspread and flooded said Russell avenue and the lands adjacent thereto or in the vicinity thereof, including about ten acres of the above described lands of the plaintiff, so that said ten acres were submerged by water and ever since have been partially or wholly submerged by said water.

"7. Said ten acres at the time of the said inundation were seeded in and would have produced during the year 1927 valuable crops of Irish potatoes, onions, beets, turnips and other vegetables, all of which crops were by reason of said inundation, destroyed and were then and there of the value of $300 per acre, all to the damage of the plaintiff in the sum of $3,000.

"Wherefore, plaintiff prays judgment against the defendants and each of them in the sum of $3,000 and the costs of this action.

"Second Cause of Action.

"For his second cause of action, the plaintiff, Hiram Adams, alleges:

"1. He adopts and reaffirms all the allegations of the foregoing statement of his first cause of action herein.

"2. The said acts of the defendants herein and each of them in constructing and maintaining said conduit and in flooding and discharging water upon the premises of the plaintiff, and the said conduit so constructed, maintained and permitted by the defendants constitute, and are, a nuisance, and endanger the health and safety of the plaintiff and the members of his family who occupy the said flooded and inundated lands of the plaintiff.

"3. Said ditches and conduit are continued to be maintained and permitted by the defendants, the same will continue to drain upon and discharge water upon the premises of the plaintiff aforesaid and will

continue to endanger the peace, health, and safety of the plaintiff and his said family, and will continue to flood and overspread the said land of the plaintiff, rendering it impossible to cultivate the same, as the result of which the plaintiff will be required to prosecute successive actions against said defendants for the injuries, damages and wrongs accruing to him from time to time, a part of which damages will be irreparable.

"Wherefore, plaintiff prays injunction against all said acts of the defendants herein complained of, that they and each of them may be enjoined from further continuing, maintaining or permitting the existence of said conduit or the escape of any water therefrom upon the premises of the plaintiff, and that said nuisance may be by order of the court ordered abated, that forthwith and pending this action, the plaintiff may be awarded similar relief, and that he may have all such other and further relief as may be in accordance with equity.

"L. O. Todd,
"Phil W. Davis, Jr.,
"Attorneys for Plaintiff."

The petitions in the other cases are similar with the distinctions above named. It was demurred to by the plaintiff in error, and several motions to strike were made by the defendants below, and finally it developed that the town of Red Fork and the town of Garden City had been absorbed and made a part of the city of Tulsa, and by reason of a failure to revive within a year the court struck from the suit those municipalities, so that it proceeded as a suit against the defendant corporation, the present plaintiff in error. It filed an answer in which it averred that it had constructed the sewer for the town of Red Fork exactly in accordance with the plans and specifications, and that it had been accepted and turned over to the town, and a denial of any damages being sustained by the plaintiff by reason of the construction of said sewer by the defendant or by reason of the maintenance thereof.

With these proceedings the case came to trial, and it developed that the sewer had been completed on the 27th of February, 1927, by the defendant, and turned over to the town of Red Fork and all payments made, and that complete performance had been had in accordance with the plans and specifications made by the governing body of the municipality.

The plan of the sewer is shown in the record, and while there is no reference in the record to any provision made to prevent back water from the Arkansas river, into which the sewer drained, yet the plan shows a flood gate there. There was abundance of proof as to the high water in the river, and that the water came through the sewer and backed up through the manholes, and either that water by reason of its pressure or some other water broke three joints of the tile near a swale or swag during the high water, which appears to have been repaired shortly afterwards by the defendant at the instance of the town of Red Fork, for which he received pay, the town recognizing that he had completed his contract with it.

Owing to the topography of the country, something like a 3 1/2 inch fall for every 100 feet was about all that could be had, the difference above sea level at the mouth of the sewer where it enters the Arkansas river and the lowest place in the swale, 1,-400 feet away, being four (4) feet. In August, 1926, in accordance with the plans then put before them, the town of Red Fork entered into a contract with the plaintiff in error to construct the sewer in accordance with the plans and specifications attached. Plaintiff in error started to do so, but in December the town of Garden City, through which the sewer would pass on its way to the Arkansas river, brought injunction proceedings to restrain the town of Red Fork from going on with the sewer construction. However, when the town of Red Fork paid the attorney fee incurred by the Garden City incorporation, and $350, an agreement was had between them by which Red Fork should use Russell avenue in the town of Garden City for this sewer construction, and finally this agreement was incorporated into a judgment rendered in the district court of Tulsa county.

These proceedings delayed the construction so that on February 27, 1927, the sewer had been completed by the contractor, according to the plans and specifications, and he had received his money and the work had been accepted, and he ceased to have anything more to do with this main sewer. The sewer is what is known as a sanitary sewer and not a drainage sewer. It is well to keep that in mind and the distinction, all of which is referred to in McQuillin's work on Municipal Corporations (2nd Ed.) section 1541.

A great deal of testimony was offered in this case, a great many objections raised, and a great many assignments of error are here made concerning the treatment that was accorded by the court below to the plaintiff in error, but we do not deem it

necessary to consider a great many of the points here urged in the voluminous briefs that have been filed.

Complaint is here made of the position of the attorney, amicus curiae, of the town of Red Fork, and a brief has been filed in this court by such attorney, though Red Fork was dismissed from the proceedings quite a while before the judgment was taken against the plaintiff in error in this case on the ground that it had been merged into the city of Tulsa. The same thing happened to the other town, but apparently voluntarily the plaintiff below dismissed as to the other town, the charge being that the other town had acquiesced in the sewer establishment. As to what the liability of Red Fork is in this case, we do not deem it necessary to minutely examine. There has been such a divergence of views between courts as to the liability of municipal corporations arising from faulty constructions of sewers, as well as from maintenance of sewers, distinction being sometimes lost sight of as to whether it was a storm sewer, or a drainage sewer, or a sanitary sewer, that it would not be profitable to review the cases.

However, on the subject of liability in this case, if any liability there is, from an inspection of the plat in the light of the evidence here adduced, the only liability that could be fastened upon the man who constructed the sewer for the town, as it seems to us, would be that if he had complied with his contract and had turned the sewer over some weeks before to the town and had received his pay, in the absence of positive negligence on his part, or failure, as applied to the situation, to construct the sewer according to the plans and specifications furnished, that there could be no liability.

Negligence is the foundation of liability in practically all cases of this kind. It is so treated in the works on the subject. But in this particular case we are unable to see that there was any proof of negligence on the part of the contractor. As applied to the situation and the terrain that was there, it was not an ideal place for the construction of a sanitary sewer.

The principles of law applicable are better deduced from text-writers than from adjudged cases, in this instance at least, as it appears to us. Our own court has not passed upon the proposition as to whether or not a municipal corporation is liable by reason of a lack of judgment in preparing plans and specifications, all of which is to be done by the governing body, though such bodies generally call to their aid trained engineers. So far as this record is concerned, the governing body not only prepared the plans, but they had before them and to assist them a civil engineer of standing. Of course, any one would know that when the water of the Arkansas river got up, with this sewer emptying into the water at low water, and with only the 4 feet fall for the first 1,400 feet back to the swale that appears to have run through the town of Garden City, that the water would run out of the manholes unless the manholes themselves were elevated above the surrounding country. Evidently anticipating that, the plan calls for a flood gate. As to whether or not the flood gate was put in, the record is silent, except that the record is complete that all the plans and specifications were completed and carried out by the contractor and the flood gate appears on the plan. The contractor could not, of course, guarantee that the flood gate would work. Neither do we think that the town could.

One of the earliest cases that we have on the subject is the case of Town of Norman v. M. J. Ince, 8 Okla. 412, 58 P. 632, in which a great many of the cases are discussed. That was a case where the drain from the overflow of the city water works was let down on an adjoining proprietor, and the principle of nonliability in certain cases is there referred to, and several cases are cited by the territorial Supreme Court. The first section of the syllabus of that case is as follows:

"1. Municipal Corporations—Damages—Liability. A municipal corporation is not impliedly liable for the incidental injuries to property, resulting from the exercise of its legislative powers, by reason of the erection and maintenance of public improvements, where the premises are in no manner invaded; yet such a corporation is responsible for the direct injuries to private property, caused by a corporate act in the nature of a trespass or nuisance."

The case of City of Chickasha v. Looney, 36 Okla. 155, 128 P. 136, was a surface water sewer case, and more cases are reviewed, and this last case is cited. Among other cases cited there is the case of King v. City of Kansas City, 58 Kan. 334, 49 P. 88. In that case the improper construction was in the failure to put the flood gate in. All of the cases go upon the doctrine of negligence, apparently.

The text-writers on the subject that are

most generally recognized are McQuillin on Municipal Corporations, Dillon on Municipal Corporations, and Abbott on Municipal Corporations. A reference to them will probably clarify the situation better than a review of cases and trying to distinguish them. By reference to Abbott on Municipal Corporations, Edition of 1905, sections 957, 958, 959, and 960, one will find the doctrines on the subject, and it appears therefrom that the liability is not absolute, but is based entirely on negligence, and that that negligence must be either in the maintenance or in construction, and that the adoption of a plan, unless palpably bad, will not create a liability. The language of the author, following the Supreme Court of the United States, in section 959, on the subject, being:

"* * * Any injuries which may result therefore, from defects in a reasonable plan or scheme as a whole or in part, can create no liability."

Here the plans and specifications were made apparently by the municipality, at least should have been so done, and the presumption is they were, in the absence of proof to the contrary, and if constructed according to those plans there would scarcely be room under the doctrine of this authority to hold the city or the contractor, working for the city, responsible for damages arising from the defects in the plan. Section 961 deals with the subject of the maintenance of the sewer after construction.

As applied to the present situation, the sewer had been constructed several weeks, and constructed strictly according to the plans prepared by the town authorities under the supervision of a trained engineer. If it should turn out that the sewer did not work, and the city persisted in not repairing and trying to make it work, there might be some room to argue that the town would then become liable on maintenance, but surely not the contractor on this ground.

Sections 2866 and 2868 of McQuillin's work on Municipal Corporations (2nd Ed.) discusses the liability for defective plans and the liability for the inadequacy of the sewer. There seems to be, under the citations of these sections, a dearth of Oklahoma authority. The same matter is treated by Dillon in his work, and the statement of the doctrine in the 5th Edition of that work is as follows:

"1739. Non-action. Defective Drains and Sewers. Since the duty on the part of a municipality of providing drainage for surface-water or constructing sewers is in its nature judicial or quasi-judicial, or, more accurately speaking, legislative, requiring the exercise of judgment as to the time when and the mode in which it shall be undertaken, the claims of respective localities as to order of commencement when it cannot all be effected at once, and the best plan which the means at the disposal of the corporation renders it practicable to adopt, it follows, upon legal principles, that the corporation is not liable to a civil action for wholly failing to provide drainage or sewerage, nor, probably, for any defect or want of efficiency in the plan or sewerage or drainage adopted; nor, according to the prevailing view, for the insufficient size or want of capacity of gutters or drains, for the purpose intended, that is, for carrying off surface water, particularly if the adjoining property is not in any worse position than if no gutters or drains whatever had been constructed. So the text substantially stood in the previous editions. We now add that the later cases tend strongly to establish, and may, we think, be said to establish, and in our judgment rightly to establish, that a city may be liable on the ground of negligence in respect of public sewers, solely constructed and controlled by it, where by reason of their insufficient size, clearly demonstrated by experience, they result under ordinary conditions in overflowing the private property of adjoining or connecting owners with sewage, and that the principle of exemption from liability for defect or want of efficiency of plan does not, as more fully stated below (1745, 1746.) extend to such a case.

"1740. Same Subject.—It is, perhaps, impossible to reconcile all of the cases on this subject, and courts of the highest respectability have held that if the sewer, whatever its plan, is so constructed by the municipal authorities as to cause a positive and direct invasion of the plaintiff's private property, as by collecting and throwing upon it, to his damage, water or sewage which would not otherwise have flowed or found its way there, the corporation is liable. This exception to the general doctrine, when properly limited and applied, seems to be founded on sound principles, and will have a salutary effect in inducing care on the part of the municipality to prevent such injuries to private property, and will operate justly in giving redress to the sufferer if such injuries are inflicted. Accordingly, although a municipality having the power to construct drains and sewers may lawfully cause them to be built so as to discharge their refuse matter into the sea, or natural stream of water, yet this right must be so exercised as not to create a nuisance, public or private. If a public nuisance is created, the public has a remedy by a public prosecution; and any individual who suffers

special injury therefrom may recover therefor in a civil action. If, therefore, deposits from sewers constructed by a city cause a peculiar injury to the owner of a wharf or dock, by preventing or materially interfering with the approach of vessels and the accustomed and lawful use of the wharf or dock, the city is liable to the latter in damages."

As applied to the present case, it appears that the injunction proceeding was lost sight of in the lower court, and we are not informed by this record that any more trouble occurred after the manholes were raised, so that to enjoin the use of the sewer as a nuisance probably was thought by the actors below as being unnecessary. As to the damages in this case, there was sharp conflict as to the amount thereof, and the jury found $1,400, but the lower court cut it to $800. It is not necessary to go into that or to delineate the measure of damages for growing crops in the spring, in view of what we have said before as to the liability.

The action must be based on negligence to hold the contractor. So far as this record is concerned, it is positive that he did just what the public required and the law required. The establishment of a sanitary sewer perhaps was not required by the positive rules of law, but everybody recognizes that it is essential to the health of the community in congested centers. The territory to go through is fixed in advance by the laws of nature, and the town of Red Fork sought to take advantage of the little drainage that was there to dispose of the sewage that collected from houses, none of the trash, however, that ordinarily goes into a drain being allowed therein. The water flowing into such a sewer would necessarily be very small in amount. The capacity of the sewer so far as carrying the water that was intended to get into it was ample to have provided for a much greater population than would appear to be in one of those small places. The gate that ordinarily should be placed over the mouth appears to have been there. As to why the gate did not operate, we do not know. But it would be a harsh rule indeed that would hold a contractor an insurer for the proper maintenance of the sewer after he had finished and it had been turned over to the municipality. In fact, if that rule were applied, the expense of installing sewers would be very greatly enhanced.

We are unable on this record to say that any negligence was established as against the contractor. A great deal of the briefs are upon other matters, but it is not necessary to discuss them in view of the way this matter appears to us. It further appears that the contractor would not be responsible for the damages arising from the overflow, even though the damages were proven with abiding assurance and the measure was properly given. As to the defendants in error having suffered legal damage at the hands of the plaintiff in error, this record will not warrant so finding, as it appears to us.

The case is accordingly reversed, with directions to set aside the judgment and to dismiss the action at the cost of the defendant in error.

RILEY, HEFNER, CULLISON, SWINDALL, and ANDREWS, JJ., concur. McNEILL, J., disqualified. LESTER, C. J., and CLARK, V. C. J., absent.